DAVID L. NEALE (SBN 141225)
TODD M. ARNOLD (SBN 221868)
ROBERT M. CARRASCO (SBN 334642)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234; Facsimile: (310) 229-1244
Email: DLN@LNBYG.COM; TMA@LNBYG.COM; RMC@LNBYG.COM

Attorneys for Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>☐ ITTELLA INTERNATIONAL LLC,<br>a California limited liability company<br>☐ ITTELLA'S CHEF, LLC,<br>a California limited liability company<br>☐ TATTOOED CHEF, INC.,<br>a Delaware corporation<br>☐ MYJOJO, INC.,<br>a Delaware corporation<br>☐ NEW MEXICO FOOD DISTRIBUTORS,<br>INC., a New Mexico corporation<br>☐ KARSTEN TORTILLA FACTORY, LLC,<br>a New Mexico limited liability company<br>☐ BCI ACQUISITION, INC.,<br>a Delaware corporation<br>☐ TTCF-NM HOLDINGS INC.,<br>a Delaware corporation<br>☒ All Debtors<br><br>     Debtors and Debtors-in-Possession. | Lead Case No.: 2:23-bk-14154-SK<br><br>Jointly administered with Case Nos.<br>2:23-bk-14159-SK; 2:23-bk-14161-SK;<br>2:23-bk-14157-SK; 2:23-bk-14158-SK;<br>2:23-bk-14155-SK; 2:23-bk-14156-SK; and<br>2:23-bk-14160-SK<br><br>Chapter 11 Cases<br><br>**DEBTORS' OMNIBUS REPLY TO INITIAL OBJECTIONS TO MOTION FOR ENTRY OF AN ORDER (1) APPROVING SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (2) APPROVING CURE AMOUNTS AND APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES AND EXECUTORY CONTRACTS; (3) WAIVING THE 14-DAY STAY PERIODS SET FORTH IN BANKRUPTCY RULES 6004(h) AND 6006(d); AND (4) GRANTING RELATED RELIEF; DECLARATION IN SUPPORT THEREOF**<br><br>Date:      September 27, 2023<br>Time:     9:00 a.m.<br>Location:  Courtroom 1575<br>           255 East Temple Street<br>           Los Angeles, California 90012<br>           [Also VIA ZoomGov] |

## TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND FACTS.................................................................. 2

II. REPLIES TO INITIAL OBJECTIONS TO THE SALE MOTION .......................................... 3

    1.    Gutierrez Initial Objection [Dkt. 368] ........................................................ 3

    2.    Grateful Egg Initial Objection [Dkt. 370]................................................... 4

    3.    Cigna Initial Objection [Dkt. 372] ............................................................. 5

    4.    Americold Initial Objection [Dkt. 373] ...................................................... 6

    5.    SACMI Initial Objection [Dkt. 375] ........................................................... 6

    6.    Dot Initial Objection [Dkt. 376]................................................................. 7

    7.    Lineage Initial Objection [Dkt. 377] .......................................................... 8

    8.    Reiser Initial Objection [Dkt. 379] ............................................................ 8

    9.    Nusenda Initial Objection [Dkt. 387 and re-filed as Dkt. 390]............................ 12

    10.    TB, LLC Initial Objection [Dkt. 391] ................................................... 13

III. CONCLUSION.............................................................................................................. 14

DECLARATION OF EDWARD BIDANSET ........................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Boates*,
    551 B.R. 428 (B.A.P. 9th Cir. 2016)..........................................................................9

**Federal Statutes**

11 U.S.C.
    § 363(k).........................................................................................................7, 12, 13
    § 553.......................................................................................................................8
    § 541.......................................................................................................................9


**Other State Statutes**

MA UCC
    § 1-201, 1-203, 2-105, and 2-401 .........................................................................11

**Other Authorities**

*Bankruptcy Rules 6004(h) And 6006(d)* ...................................................................2

**TO THE HONORABLE SANDRA R. KLEIN, UNITED STATES BANKRUPTCY JUDGE FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

Ittella International LLC ("Ittella"), Ittella's Chef, LLC ("ICLLC"), Tattooed Chef, Inc. ("TCI"), Myjojo, Inc. ("Myjojo"), New Mexico Food Distributors, Inc. ("NMFD"), Karsten Tortilla Factory, LLC ("Karsten"), BCI Acquisition, Inc. ("BCI"), and TTCF-NM Holdings Inc. ("TTCF, and, together with Ittella, ICLLC, TCI, Myjojo, NMFD, Karsten, and BCI, the "Debtors"), the Chapter 11 debtors and debtors in possession in the above-captioned, jointly administered Chapter 11 bankruptcy cases, hereby file this omnibus reply (the "Reply") to the Initial Sale Motion Objections[1] to the Sale Motion filed by (1) Larry Gutierrez ("Gutierrez") [Dkt. 368], (2) Grateful Egg, LLC ("Grateful Egg") [Dkt. 370], (3) Cigna Health and Life Insurance Company and Cigna HealthCare of California ("Cigna") [Dkt. 372], (4) Americold Logistics LLC ("Americold") [Dkt. 373], (5) SACMI USA, Ltd. ("SACMI") [Dkt. 375], (6) Dot Foods, Inc. ("Dot") [Dkt. 376], (7) Lineage Logistics, LLC ("Lineage") [Dkt. 377], (8) Robert Reiser & Co., Inc. ("Reiser"), [Dkt. 379], (9) Nusenda Federal Credit Union ("Nusenda") [Dkt. 387 and re-filed as Dkt. 390], and (10) Tortilla Building, LLC ("TB, LLC") [Dkt. 391] (each an "Objection" or "Initial Objection").

## I.

## INTRODUCTION AND BACKGROUND FACTS

On August 1, 2023, the Debtors filed their *Motion To: (1) Approve Auction(s) And Bid Procedures For The Sale Of Equity And/Or Assets And (2) Set Scheduling For A Motion To Approve The Sale Of Equity And/Or Assets* (the "Bid Procedures Motion") [Dkt. 174].  On August 16, 2023, the Court entered its *Order Granting Debtors' Motion To: (1) Approve Auction(s) And Bid Procedures For The Sale Of Equity And/Or Assets And (2) Set Scheduling*

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Debtors' *Motion For Entry Of An Order (1) Approving Sale Of Substantially All Of The Debtors' Assets Free And Clear Of All Liens, Claims, Encumbrances, And Interests; (2) Approving Cure Amounts And Approving The Assumption And Assignment Of Certain Unexpired Leases And Executory Contracts; (3) Waiving The 14-Day Stay Periods Set Forth In Bankruptcy Rules 6004(h) And 6006(d); And (4) Granting Related Relief* (the "Sale Motion") [Dkt. 352] and related notice thereof (the "Notice") [Dkt. 356]

*For A Motion To Approve The Sale Of Equity And/Or Assets* (the "Bid Procedures Order") [Dkt. 277]. Pursuant to the Bid Procedures Order, among other things, (1) September 5, 2023 was set as the deadline for the Debtors to file the Sale Motion, (2) September 8, 2023 was set as the deadline for parties in interest to file Initial Sale Motion Objections – *i.e.*, "objections to the Sale Motion, other than in regard to [a] a sale of the Assets free and clear of all liens, claims, and interests if the proposed sale price is less than all secured debt, and secured creditors have not consented to the proposed sale of Assets pursuant to the Sale Motion, (b) the assumption and assignment of Designated Agreements as to adequate assurance of future performance, but not as to cure amounts, for which [September 8, 2023 would] be the deadline to object, and (c) a good faith finding with respect to the Winning Bidders, and (3) September 15, 2023 was set as the deadline for the Debtors and any other parties in interest to file replies to Initial Sale Motion Objections.

On September 5, 2023, the Debtors filed their Notice of the Sale Motion and Sale Motion [Dkts. 352 and 356].

After September 5, 2023, the parties below filed Initial Objections to the Sale Motion. As discussed below, (1) many of the Objections were filed after the deadline for filing such Objections and, therefore should be stricken, (2) none of the Objections argue that the proposed Auction sale of substantially all of the Debtors' Assets is not in the best interests of the Debtors' estates and the creditors thereof, (3) almost all of the Objections, some of which have been or are expected to be resolved, relate to reservation of rights, and (4) none of the Objections serve as a basis for denying the Sale Motion or the relief requested therein.

## II.

## REPLIES TO INITIAL OBJECTIONS TO THE SALE MOTION

### 1. Gutierrez Initial Objection [Dkt. 368]

Prior to the Petition Date, NMFD (as tenant) and Gutierrez (as landlord) were parties to a lease (the "University Lease") for real property located at 3041 University Blvd. SE, Albuquerque, NM 87106 (the "University Premises"). Gutierrez filed a motion for relief from stay (the "RFS Motion") [Dkt. 316] seeking, *inter alia*, a determination that the University Lease

was terminated before the Petition Date and, therefore, is not property of NMFD's bankruptcy estate and cannot be sold, assumed, and/or assigned. Similarly, in his Initial Objection, Gutierrez asserts that (1) the University lease was terminated before the Petition Date and, therefore, is not property of NMFD's bankruptcy estate and cannot be sold, assumed, and/or assigned, (2) assuming the University Lease is property of NMFD's, the Sale Motion fails to describe how the Debtor will cure the defaults under the lease regarding the alleged non-payment of taxes, late fees, holdover rent and failure to failure to submit the reports required by the master "IRB Lease" related to the University Property, and (3) pursuant to the Sale Motion, the Debtors are seeking to sell assets such as a boiler, freezers, and compressors that are permanently affixed to the University Premises and, therefore cannot be sold.

The Debtors have reached an agreement in principal with Gutierrez that would resolve his RFS Motion and Initial Objection to the Sale Motion. The agreement addresses, *inter alia*, NMFD's rejection of the University Lease, the time for NMFD to vacate the University Premises, the payment of rent for the University Premises, NMFD's submission of reports required by the master "IRB Lease," and the identification of fixtures that cannot be sold. The parties are in the process of documenting that agreement, and the Debtors expect that such agreement will be filed with the Court, and hopefully approved by the Court, in advance of the hearing on the Sale Motion. In the meantime, the Debtors hereby confirm that, by way of the Sale Motion, they will not seek, and are not seeking, to (1) sell, assume, and/or assign the University Lease or (2) sell any assets permanently affixed to the University Premises.[2]

**2.    Grateful Egg Initial Objection [Dkt. 370]**

Prior to the Petition Date, Ittella (as tenant) and Grateful Egg (as landlord) were parties to a lease (the "Vernon Lease") for real property located at 2021 E. 52nd St, Vernon, CA 90058 (the "Vernon Premises"). In its Initial Objection, Grateful Egg asserts that (1) Ittella owes

---

[2] In the event the parties are not able to document and obtain Court approval of an agreement resolving Gutierrez's RFS Motion and Initial Objection to the Sale Motion, the Debtors hereby incorporate by reference the arguments set forth in the Debtors' reply [Dkt. 232] to Gutierrez's opposition to the Debtors' Bid Procedures Motion regarding, among other things, why the University Lease was not terminated before the Petition Date.

$32,329.41 in post-Petition Date rent that needs to be paid as a cure before any assumption and/or assignment of the Vernon Lease, (2) there are non-monetary defaults that would need to be cured before any assumption and/or assignment of the Vernon Lease, and (3) pursuant to the Sale Motion, the Debtors are seeking to sell battery chargers that are permanently affixed to the Vernon Premises and, therefore cannot be sold.

Based on discussions with Grateful Egg, in the Debtors' updated list of Assets offered for sale at the Auction [Dkt. 360], the Debtors' removed from such list certain racking that the Debtors agree is owned by Grateful Egg.  The list still includes "Battery Chargers."  The Debtors have advised Grateful Egg that the "Battery Chargers" referenced in the current list of Assets are the battery chargers for forklifts that the Debtors purchased (the "Forklift Chargers").  A list of such forklifts and Forklift Chargers, which the Debtors paid for and are owned by the Debtors, is attached hereto as **Exhibit "1."**  The Forklift Chargers are not affixed to the Vernon Premises. The Debtors will continue to work with Grateful Egg to confirm that the "Battery Chargers" referenced in the Sale Motion that the Debtors are seeking to sale are the Forklift Chargers and that the Forklift Chargers are not affixed to the Vernon Property.

In the meantime, the Debtors hereby confirm that, by way of the Sale Motion, they (1) will not seek, and are not seeking, to sell, assume, and/or assign the Vernon Lease, provided that the Debtors may seek to do so or to reject the Vernon Lease by way of a separate motion, and (2) are seeking to sell the Forklift Chargers, but will not seek, and are not seeking, to sell any "Battery Chargers" that are affixed to the Vernon Property and constitute "fixtures."

**3.      Cigna Initial Objection [Dkt. 372]**

Cigna objects to the Sale Motion to the extent it may seek to allow the Debtors to assume and assign any "Employee Benefits Agreements" (as defined and discussed in Cigna's Initial Objection).  The Debtors hereby confirm that, by way of the Sale Motion, they will not seek, and are not seeking, to sell, assume, and/or assign the Employee Benefits Agreements.  Based on the foregoing, the Debtors and Cigna have agreed that Cigna's Initial Objection will be fully resolved by the inclusion of the following language in any order granting the Sale Motion:

Notwithstanding anything to the contrary in this Sale Order, or any Notice

related thereto, unless Cigna Health and Life Insurance Company and the Debtors agree otherwise, the Employee Benefits Agreements (as defined in the *Limited Objection of Cigna to Debtors' Motion for Entry of an Order (1) Approving Sale of Substantially all of the Debtors' Assets Free and Clear of all Liens, Claims, Encumbrances, and Interests; (2) Approving Cure Amounts and Approving the Assumption and Assignment of Certain Unexpired Leases and Executory Contracts; (3) Waiving the 14-Day Stay Periods Set Forth in Bankruptcy rules 6004(h) and 6006(d); and (4) Granting Related Relief* [Dkt. 372] (the "Cigna Objection")) shall not be assumed and assigned to any Buyer, and shall not be deemed rejected by this Sale Order.

Based on the foregoing, the Debtors respectfully request that the foregoing language be included in any order granting the Sale Motion.

### 4.    Americold Initial Objection [Dkt. 373]

Americold provides warehouse services to the Debtors whereby Americold stores certain of the Debtors' inventory.  Americold asserts statutory, possessory warehouse liens on the subject inventory and/or rights of setoff related to such inventory.  Based on the foregoing and Americold's claims asserted against the Debtors, Americold objects to any sale of the Debtors' inventory stored by Americold free and clear of Americold's liens/rights of setoff.  The Debtors agree that, to the extent any of the Debtors' inventory in Americold's possession is sold pursuant to the Sale Motion, the Debtors will pay, on closing, an amount sufficient to pay for storage costs related to such sold inventory, up to payment in full, while leaving inventory with a value equal to, or in excess of, the value of any remaining claims of Americold against the Debtors.

### 5.    SACMI Initial Objection [Dkt. 375]

BCI owns the following SACMI equipment: SACMI Model Flow Pack JT-Pro (S/N IPPC21MA081) and SACMI Model ISOLA Trifunzionale (S/N IPPC21MA027), and related rights (the "SACMI Equipment").[3]  SACMI does not object to the Sale Motion generally, but objects to the Sale Motion to the extent the Debtors are seeking to sell the SACMI Equipment

---

[3] The SACMI Equipment is also identified as follows: (1) JT Pro Flow-wrapper, EWF Electronic wrapper feeder, Format P1 for the JT Pro flow-wrapper, and other items as more fully described in Offer #20-034566-A4 dated February 22, 2021 and (2) Modular Robotic Top-loading Packing Cell, Format P1 for the Work Cell, and other items as more fully described in Offer #20-034566-A0 dated January 26, 2021. *See* SACMI Proof of Claim No. 110, Exhibits "1" – "4" and "6" – "8;" *see also*, Sale Motion [Dkt. 352], ECF, pp. 126-127.

free and clear of SACMI's liens without a right to credit bid pursuant to Section 363(k).

The Debtors have agreed that SACMI can credit bid its entire claim for the SACMI Equipment. As set forth in the Debtors' *Notice Of Qualified Bids And Opening Bids* [Dkt. 404], SACMI's credit bid of its entire claim in the approximate amount of $619,431.89 is the opening bid for the SACMI Equipment. Pursuant to the agreement between the Debtors and SACMI (subject to any required agreement from UMB), if SACMI's credit bid for the SACMI Equipment is the highest and best offer for such equipment and the sale to SACMI is approved by the Court, any claims of SACMi against the Debtors, including any alleged deficiency claims, will be satisfied in full. To the extent there was a successful bid for the SACMI Equipment in excess of SACMI's credit bid, then the Debtors would have sufficient funds to pay SACMI's lien, which, as set forth in the Sale Motion, appears to be senior to any other liens on the SACMI Equipment. Based on the foregoing, the Debtors believe that SACMI's Objection is resolved.

**6.    Dot Initial Objection [Dkt. 376]**

Dot acknowledges that the Debtors "assert that Dot owes the Debtors the sum of $811,727.25." Dot does not dispute the amount is owed. However, "Dot contends that the Debtors owe Dot an amount of at least $321,211.60 (and more credits may be due) in credits for product returns and deductions (the "Set Off Amount")." Dot does not provide any legitimate evidence of its alleged Set Off Amount. The evidence of the alleged Set Off Amount is limited to the declaration of Liz Tracy attached to Dot's Objection. Ms. Tracy states that she is corporate counsel for Dot, not a Chief Financial Officer or other person at Dot that would have a basis for asserting that there is a Set Off Amount or the value thereof. Similarly, Ms. Tracy's declaration is wholly devoid of any statements that would provide a basis for her bald assertion that "Dot contends that the Debtors owe Dot an amount of at least $321,211.60. For example, Ms. Tracy does not state that she reviewed and is familiar with Dot's books and records, that the asserted Set Off Amount is based on Dot's books and records, or the basis for the alleged Set Off Amount. In fact, Dot merely "contends" that it has a bona fide Set Off Amount not that it actually has a Set Off Amount. Further, Dot was not scheduled for any claim, and, while the claims bar date is not until October 3, 2023 [see Claims Bar Date Order [Dkt. 193], Dot has not

filed any Proofs of Claim against the Debtor.  Additionally, Dot asserts that its alleged Set Off Amount is based on a supplier agreement attached to its Objection as Exhibit "A."  However, there is no supplier agreement attached to Dot's Objection that was filed on September 8, 2023, and, despite stating in its Objection that the supplier agreement would be filed with the Court after Dot filed a motion to seal, no such motion has been filed with the Court.  In short, Dot has not established that it has any claim to set off, the value of its alleged Set Off Amount, or any of the other requirements for setoff under Section 553 to establish a secured claim.

Notwithstanding the foregoing, Dot objects to the Sale Motion to the extent the Debtors seek to sell accounts receivable owed by Dot to the Debtors free and clear of Dot's alleged secured claim for the Set Off Amount.  If such accounts receivable are not sold, Dot's Objection is moot.  If the Debtors sell accounts receivable owed by Dot to the Debtors, the Debtors will reserve the consideration paid for such accounts receivable up to an amount of $321,211.60 with Dot's alleged lien for the Set Off Amount to attach to such proceeds with the same validity, enforceability, and priority as existed on the Petition Date.

**7.    Lineage Initial Objection [Dkt. 377]**

Similar to Americold, Lineage provides warehouse services to the Debtors whereby Lineage stores certain of the Debtors' inventory.  Lineage asserts statutory, possessory warehouse liens on the subject inventory and/or rights of setoff related to such inventory.  Based on the foregoing and Lineage's claims asserted against the Debtors, Lineage objects to any sale of the Debtors' inventory stored by Lineage free and clear of Lineage's liens/rights of setoff. The Debtors agree that, to the extent any of the Debtors' inventory in Lineage's possession is sold pursuant to the Sale Motion, the Debtors will pay, on closing, an amount sufficient to pay for storage costs related to such sold inventory, up to payment in full, while leaving inventory with a value equal to, or in excess of, the value of any remaining claims of Lineage against the Debtors.

**8.    Reiser Initial Objection [Dkt. 379]**

Immediately on filing, Reiser was served, via ECF service on its counsel of record, with the Sale Motion and the Notice of Sale Motion, which provided notice of, among other things,

the September 8, 2023 deadline to file Initial Objections.  *See* (1) Proofs of Service attached to Notice of Sale Motion [Dkt. 356] and Sale Motion [Dkt. 352], which include ECF service on Matthew D. Resnik (Matt@rhmfirm.com), (2) Reiser's objection to the Bid Procedures Motion that was filed by Mr. Resnik as counsel for Reiser on August 9, 2023 [Dkt. 223], which was after the August 8, 2023 deadline set by the Court [*see* Scheduling Order at Dkt. 187], which resulted in Reiser withdrawing its late-filed objection [see Dkt. 224], and (3) the Certificate of Service [Dkt. 361] of the Notice of Sale Motion and the Sale Motion filed by Stretto, the Debtors' claims agent, showing service on Reiser.  Despite timely service and having previously filed its objection to the Bid Procedures after the deadline for doing so, Reiser's Initial Objection was filed on September 9, 2023, after the September 8, 2023 deadline for filing Initial Objections. Based on the foregoing, Reiser's Initial Objection should be stricken.

Even if the Court considers Reiser's late filed Initial Objection, it has no merit and does not serve as a basis for denying the Sale Motion.  Reiser's primary argument is that NMFD does not own the equipment Reiser sold to it, because Reiser purportedly retained an ownership interest in the equipment even after the sale and delivery of the equipment to NMFD and that the NMFD would only own the equipment after final payment to Reiser.  Reiser's assertion is not supported by the facts or the law.

Under Section 541, property of the estate include "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541. "For purposes of determining what is property of the estate, debtor's rights in the subject property are determined under applicable state law."  *In re Boates*, 551 B.R. 428, 438 (B.A.P. 9th Cir. 2016) (citing *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)).

Here, the agreements between NMFD (as seller) and NMFD (as buyer) are governed by Massachusetts state law.  Reiser Objection, at Exhibits "1" and "3," at ¶ 11.  The Massachusetts UCC provides in pertinent parts as follows:

### § 1-201. General Definitions.

(15) "Delivery", with respect to an instrument, document of title, or chattel paper, means voluntary transfer of possession.

(16) "Document of title" includes bill of lading, dock warrant, dock receipt, warehouse receipt or order for the delivery of goods, and also any other document which in the regular course of business or financing is treated as adequately evidencing that the person in possession of it is entitled to receive, hold, and dispose of the document and the goods it covers. To be a document of title, a document must purport to be issued by or addressed to a bailee and purport to cover goods in the bailee's possession which are either identified or are fungible portions of an identified mass.

…

**(35) "Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation.** "Security interest" includes any interest of a consignor and a buyer of accounts, chattel paper, a payment intangible, or a promissory note in a transaction that is subject to Article 9. "Security interest" does not include the special property interest of a buyer of goods on identification of those goods to a contract for sale under Section 2-505, the right of a seller or lessor of goods under Article 2 or 2A to retain or acquire possession of the goods is not a "security interest", but a seller or lessor may also acquire a "security interest" by complying with Article 9. **The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer under Section 2-401 is limited in effect to a reservation of a "security interest." Whether a transaction in the form of a lease creates a "security interest" is determined pursuant to Section 1-203.**

…

**§ 1-203. Lease Distinguished from Security Interest.**

**(a) Whether a transaction in the form of a lease creates a lease or security interest is determined by the facts of each case.**

…

**§ 2-105. Definitions: Transferability; "Goods"; "Future" Goods; "Lot"; "Commercial Unit".**

(1) "Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action.

…

**§ 2-401. Passing of Title; Reservation for Security; Limited Application of This Section.**

Each provision of this Article with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies irrespective of title to the goods except where the provision refers to such title. Insofar as situations are not covered by the other provisions of this Article and matters concerning title become material the following rules apply:

(1) Title to goods cannot pass under a contract for sale prior to their identification to the contract (Section 2-501), and unless otherwise explicitly agreed the buyer acquires by their identification a special property as limited by this Act. ***Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest.*** Subject to these provisions and to the provisions of the Article on Secured Transactions (Article 9), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.

(2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading

> (a) if the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; but
> (b) if the contract requires delivery at destination, title passes on tender there.

(3) Unless otherwise explicitly agreed where delivery is to be made without moving the goods,

> (a) if the seller is to deliver a document of title, title passes at the time when and the place where he delivers such documents; or
> (b) if the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time and place of contracting.

…

MA UCC § 1-201, 1-203, 2-105, and 2-401 (emphasis added).

All of the pertinent facts show that the subject equipment was sold by Reisner to NMFD,

that NMFD owns such equipment, and that NMFD merely retained a security interest in the equipment.  The agreements between NMFD (as seller) and NMFD (as buyer) are titled "Sale Agreement(s)."  Reiser Objection, at Exhibits "1" and "3," at title of agreements between the parties.  The Sale Agreements provide for Reiser to deliver the subject equipment to NMFD, which Reiser did, and for Reiser to retain a security interest in the equipment to secure payment, which security interests Reiser recorded.  Reiser Objection, at (1) Exhibits "1" and "3," at ¶ 9 (providing for Reiser to obtain security interests in the subject equipment) and (2) Exhibits "2" and "4" (Reiser's recorded UCC-1 Financing Statements); see also  Reiser Objection, at ¶¶ 4 and 10 indicating that the equipment was delivered by Reiser to NMFD.  Despite all of the foregoing, Reiser argues that it retained ownership of the equipment pursuant to ¶ 9 of the Sale Agreements between the parties providing that "Title to the Equipment Shall remain with Reiser until all required payments … have been fully paid."  However, the UCC is clear that when, as here, goods are sold and delivered the only "title" a seller can retain is a security interest.  Based on the foregoing, it is clear that the subject equipment is owned by NMFD, provided that Reiser may have a lien on such equipment.

The Debtors agree that, subject to the requirements of Section 363(k) and the Bid Procedures Order, and assuming such requirements are satisfied, Reiser can credit bid up to its allowed claim for the equipment that is subject to its lien.

**9.    Nusenda Initial Objection [Dkt. 387 and re-filed as Dkt. 390]**

Immediately on filing, Nusenda was served, via ECF service on its counsel of record, with the Sale Motion and the Notice of Sale Motion, which provided notice of, among other things, the September 8, 2023 deadline to file Initial Objections.  *See* (1) Proofs of Service attached to Notice of Sale Motion [Dkt. 356] and Sale Motion [Dkt. 352], which include ECF service on Edward Rubacha (er@jhkmlaw.com), which is counsel of record to Nusenda and filed its Initial Objection and (2) the Certificate of Service [Dkt. 361] of the Notice of Sale Motion and the Sale Motion filed by Stretto, the Debtors' claims agent, showing service on Nusenda. Despite timely service, Nusenda's Initial Objection was filed on September 12, 2023, after the September 8, 2023 deadline for filing Initial Objections.  Based on the foregoing, Nusenda's

Initial Objection should be stricken.

Even if Nusenda's Initial Objection is considered it can be resolved by allowing Nusenda to credit bid. Nusenda's objection to the Sale Motion is based on its assertion that (1) it has a senior lien on the following Assets offered for sale: Lawrence Equipment Mega 52 & Legend 42 Automated Tortilla Production Equipment including all related parts, whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing located at 2810 Karsten Court SE, Albuquerque NM 87102 (the "Nusenda Equipment"), and (2) that Nusenda should be entitled to credit bid on the Nusenda Equipment.

The Debtors agree that, subject to the requirements of Section 363(k) and the Bid Procedures Order, and assuming such requirements are satisfied, Nusenda can credit bid up to its allowed claim for the Nusenda Equipment. If Nusenda makes a successful credit bid for the Nusenda Equipment, Nusenda's claim will be reduced by the amount if its credit bid. To the extent there was a successful bid for the Nusenda Equipment in excess of Nusenda's claim, then the Debtors would have sufficient funds to pay Nusenda's lien, which, as set forth in the Sale Motion, appears to be senior to any other liens on the Nusenda Equipment. Based on the foregoing, the Debtors believe that Nusenda's Objection is resolved.

## 10.    TB, LLC Initial Objection [Dkt. 391]

Prior to the Petition Date, TTCF (as tenant) and TB, LLC (as landlord) were parties to a lease (the "Desert Surf Lease") for real property located at 1700 Desert Surf Circle NE, Albuquerque, NM (the "Desert Surf Premises"). TB, LLC asserts that it is owed not less than $17,325.00 in professional fees and expenses that are reimbursable under the Desert Surf Lease that must be paid to cure the Desert Surf Lease before any assumption and assignment thereof. The Debtors will work with TB, LLC to come to agreement on the Cure Amount and agree that the Cure Amount must be paid before any assumption and assignment of the Desert Surf Lease.

# III.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court enter an order:

(1)    overruling any Initial Sale Motion Objections that are not resolved by the Debtors and the objecting party;

(2)    granting the relief specified in items (1) – (12) of the Sale Motion, and

(3)    granting such other and further relief as the Court deems just and proper.

Dated:  September 15, 2023            LEVENE, NEALE, BENDER, YOO
                                                      & GOLUBCHIK L.L.P.

                                            By:___/s/ *Todd M. Arnold*_____
                                                   DAVID L. NEALE
                                                   TODD M. ARNOLD
                                                   ROBERT M. CARRASCO
                                            Attorneys for Debtors and Debtors in Possession

## DECLARATION OF EDWARD BIDANSET

I, Edward Bidanset, hereby declare as follows:

1.      Except where otherwise stated, I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.      I make this declaration in support of the Omnibus Reply to which this declaration is attached.  Unless otherwise stated, all capitalized terms herein have the same meanings as in the foregoing Omnibus Reply.

3.      I serve as the Chief Restructuring Officer of the Debtors in the above-captioned, jointly administered, Chapter 11 bankruptcy cases pursuant to the Court's order [Dkt. 121] granting the Debtors' *Emergency Motion For Entry Of An Order (1) Authorizing The Retention Of Cutsheet Express, LLC ["CE"]; (2) Authorizing The Designation Of Edward Bidanset As Chief Restructuring Officer Effective As Of The Petition Date; And (3) Granting Related Relief* [Dkt. 11].

4.      I am the sole member, manager, and employee of CE, which is an internationally recognized restructuring and turnaround firm with substantial experience in providing interim management and financial advisory services and has an excellent reputation for its work in complex situations including in Chapter 11 cases on behalf of debtors and creditors throughout the United States.

5.      I am a turnaround executive with more than 35 years of financial consulting and management experience.  I have an extensive background in turnarounds, crisis management, investment banking, and sales of assets in and out of bankruptcy cases.  I have worked with both Fortune 500 firms and privately held companies, acting as an advisory consultant or taking on the role of CRO, CFO or COO.  I have particular expertise working with companies in the consumer products, food processing, retail, printing, plastics and metals industries.

6.      I have been a member of the Turnaround Management Association (TMA) and the Financial Executives Institute.  I hold a Bachelor's degree in Economics from the State University of New York (SUNY) at Cortland and an MBA from Duke University's Fuqua School of Business.

7.     I have reviewed and am familiar with and am knowledgeable about the books and records of the Debtors, which books and records are made in the regular practice of business, kept in the regular course of business, made by a person with knowledge of the events and information related thereto, and made at or near the time of events and information recorded.

8.     Based on discussions with Grateful Egg, in the Debtors' updated list of Assets offered for sale at the Auction [Dkt. 360], the Debtors' removed from such list certain racking that the Debtors agree is owned by Grateful Egg.  The list still includes "Battery Chargers."  The Debtors have advised Grateful Egg that the "Battery Chargers" referenced in the current list of Assets are the battery chargers for forklifts that the Debtors purchased (the "Forklift Chargers").  A list of such forklifts and Forklift Chargers, which the Debtors paid for and are owned by the Debtors, is attached hereto as **Exhibit "1."**  The Forklift Chargers are not affixed to the Vernon Premises.  The Debtors will continue to work with Grateful Egg to confirm that the "Battery Chargers" referenced in the Sale Motion that the Debtors are seeking to sale are the Forklift Chargers and that the Forklift Chargers are not affixed to the Vernon Property.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 15th day of September 2023, at _Paramount, CA._____.


_____Edward Bidanset_____
EDWARD BIDANSET

16

# EXHIBIT "1"

| Equipment | | Purchase Price | Battery Purchase Price and Date | | Charger Purchase Price and Date | | Notes |
|---|---|---|---|---|---|---|---|
| Scissor Lift | | $ 14,397.25 | | | | | Battery and charger on board |
| Walkie Riders | | | | | | | |
| | Truck #18 (Yale MPE060LVGN24T2748 2011) | $ 13,304.18 | $ 3,815.00 | 6/14/2013 | $ 1,880.30 | 9/16/2002 | |
| | Truck #20 (Raymond 8410-FRE60L 2013) | $ 11,515.10 | $ 3,409.00 | 9/25/2015 | $ 4,150.00 | 9/25/2015 | |
| | Truck #21 (Raymond 8410-FRE60L 2013) | $ 11,515.10 | $ 4,580.16 | 4/22/2021 | $ 1,837.00 | 10/9/2006 | |
| Counterbalance trucks | | | | | | | |
| | Truck #08 (Raymond R35C35TT 2004) | $ 26,449.70 | $ 8,454.04 | 9/8/2016 | $ 5,225.46 | 9/8/2016 | |
| | Truck #26 (Raymond 4250C40TT 2014) | $ 29,012.41 | $ 9,780.13 | 7/8/2019 | $ 5,497.96 | 7/11/2014 | |
| Reach trucks | | | | | | | |
| | Truck #22 (Raymond 750DR32TT 2014) | $ 36,959.65 | $ 8,076.90 | 12/8/2015 | $ 4,768.75 | 12/8/2015 | |
| | Truck #23 (Raymond 750DR32TT 2014) | $ 36,959.65 | $ 8,920.26 | 1/9/2018 | $ 4,144.95 | 1/9/2018 | |
| | Truck #27 (Raymond 750DR32TT 2014) | $ 36,959.65 | $ 8,510.72 | 6/16/2014 | $ 4,972.58 | 5/27/2014 | |
| | Truck #28 (Raymond 750DR32TT 2014) | $ 37,781.25 | $ 8,510.72 | 9/18/2014 | $ 4,972.00 | 5/27/2014 | |
| Hand trucks | | | | | | | |
| | H1 Magliner hand truck 2013 | $ 241.33 | NA | NA | NA | NA | |
| | H2 Magliner hand truck 2013 | $ 241.33 | NA | NA | NA | NA | |
| Pallet jacks | | | | | | | |
| | C1 Crown hand pallet truck PTH 50 27-48 2010 | $ 412.17 | NA | NA | NA | NA | |
| | C2 Crown hand pallet truck PTH 50 27-48 2010 | $ 412.17 | NA | NA | NA | NA | |
| | C3 Crown hand pallet truck PTH 50 27-48 2010 | $ 429.92 | NA | NA | NA | NA | |
| | LR1 Lift-Rite hand pallet truck 2020 | NA | NA | NA | NA | NA | |
| Batteries and Chargers | | | | | | | Included in suggested sale price for forklifts. |
| Totaltrax system | | $ 23,455.25 | NA | NA | NA | NA | |
| PJ1 Pallet jack adaptor attachment (adjustable pallet jockey) Yellow 2022 | | $ 241.10 | NA | NA | NA | NA | |
| SJ1 Stabilizing jack 10 Yellow 2016 | | $ 556.10 | NA | NA | NA | NA | |
| #30 - Hino 338 Conventional Cab, #22034W1, 5PVNV8JV4G4S56046 | | | $ 2,016.00 | | | | 113,161 Miles |
| #33 - International LT625 6X4 2019, #9610599, 3HCDZAPR9KL306544 | | | $ 2,020.00 | | | | 2019 Model |
| #6 - Great Dane ref trailer, #1WK5379, 1GRAA9020XB179202 | | | 11/11/2015 | | | | 1999 Model |
| | | | | | | | |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034

A true and correct copy of the foregoing document entitled **DEBTORS' OMNIBUS REPLY TO INITIAL OBJECTIONS TO MOTION FOR ENTRY OF AN ORDER (1) APPROVING SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (2) APPROVING CURE AMOUNTS AND APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES AND EXECUTORY CONTRACTS; (3) WAIVING THE 14-DAY STAY PERIODS SET FORTH IN BANKRUPTCY RULES 6004(h) AND 6006(d); AND (4) GRANTING RELATED RELIEF; DECLARATIONS IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **September 15, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Mark A Amendola     mamendola@martynlawfirm.com**
- **Todd M Arnold     tma@lnbyg.com**
- **Marshall J August     maugust@frandzel.com, rsantamaria@frandzel.com**
- **Tanya Behnam     tbehnam@polsinelli.com, tanyabehnam@gmail.com;ccripe@polsinelli.com;ladocketing@polsinelli.com**
- **Michael Jay Berger     michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com**
- **Daren Brinkman     firm@brinkmanlaw.com, 7764052420@filings.docketbird.com**
- **Robert Carrasco     rmc@lnbyg.com**
- **Abram Feuerstein     abram.s.feuerstein@usdoj.gov**
- **John-Patrick M Fritz     jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com**
- **Michael I. Gottfried     mgottfried@elkinskalt.com, cavila@elkinskalt.com,lwageman@elkinskalt.com,docketing@elkinskalt.com**
- **Everett L Green     everett.l.green@usdoj.gov**
- **David S Hagen     davidhagenlaw@gmail.com**
- **Mark S Horoupian     mark.horoupian@gmlaw.com, mhoroupian@ecf.courtdrive.com;cheryl.caldwell@gmlaw.com;karen.files@gmlaw.com**
- **K Kenneth Kotler     kotler@kenkotler.com, linda@kenkotler.com**
- **Jeffrey A Krieger     jkrieger@ggfirm.com, kwoodson@greenbergglusker.com;calendar@greenbergglusker.com;jking@greenbergglusker.com**
- **Aaron J Malo     amalo@sheppardmullin.com, clopez@sheppardmullin.com;abilly@sheppardmullin.com**
- **Ron Maroko     ron.maroko@usdoj.gov**
- **Kyle J Mathews     kmathews@sheppardmullin.com**
- **David W. Meadows     david@davidwmeadowslaw.com**
- **Angela Z Miller     amiller@phillipslytle.com, styrone@phillipslytle.com**
- **John A Moe     john.moe@dentons.com, glenda.spratt@dentons.com;derry.kalve@dentons.com**
- **Tania M Moyron     tania.moyron@dentons.com, rebecca.wicks@dentons.com;kathryn.howard@dentons.com;derry.kalve@dentons.com;glenda.spratt@dentons.com;DOCKET.GENERAL.LIT.LOS@dentons.com**
- **Alan I Nahmias     anahmias@mbn.law, jdale@mbn.law**
- **David L. Neale     dln@lnbyg.com**
- **Matthew D. Resnik     Matt@rhmfirm.com, roksana@rhmfirm.com;rosario@rhmfirm.com;sloan@rhmfirm.com;priscilla@rhmfirm.co**

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                   **F 9013-3.1.PROOF.SERVICE**

m;rebeca@rhmfirm.com;david@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;russ@rhmfirm.com
- **Edward Rubacha**    er@jhkmlaw.com, docket@jhc.law;am@jhc.law
- **Paul R Shankman**    PShankman@fortislaw.com, info@fortislaw.com
- **Amit Kumar Sharma**    amit.sharma@aisinfo.com
- **David Samuel Shevitz**    david@shevitzlawfirm.com, shevitzlawfirm@ecf.courtdrive.com;r48785@notify.bestcase.com;Jose@shevitzlawfirm.com
- **Ronald P Slates**    rslates2@rslateslaw.com, scannavan@rslateslaw.com;slatesecf@rslateslaw.com
- **Lindsey L Smith**    lls@lnbyg.com, lls@ecf.inforuptcy.com
- **Randy S Snyder**    rsnyder@rsslegal.com
- **Alan G Tippie**    Alan.Tippie@gmlaw.com, atippie@ecf.courtdrive.com;Karen.Files@gmlaw.com,patricia.dillamar@gmlaw.com,denise.walker@gmlaw.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Glenn S Walter**    gwalter@honigman.com
- **Roye Zur**    rzur@elkinskalt.com, cavila@elkinskalt.com;lwageman@elkinskalt.com;1648609420@filings.docketbird.com

**2. SERVED BY UNITED STATES MAIL**: On **September 15, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

In re itella International LLC
Case No. 10097
RSN
Served by U.S. Mail or **NEF** if marked
with an *

| | |
|---|---|
| Attn: BMW Financial Services NA, LLC Department /AIS Portfolio Services, LLC / Amit Sharma **(NEF)*** 4515 N Santa Fe Ave. Dept. APS Oklahoma City, OK 73118 | SUITABLE STAFFING SOLUTIONS, INC. c/o Frandzel Robins Bloom & Csato, L.C. Attn: Marshall J. August **(NEF)*** 1000 Wilshire Boulevard, 19th Floor Los Angeles, California, 90017-2427 |
| Edward Rubacha **(NEF)*** Jennings Haug Keleher McLeod, L.L.P. 2800 N. Central Avenue, Suite 1800 Phoenix, AZ 85004-1049 | SKILLSET GROUP LLC c/o Law Offices of K. Kenneth Kotler Attention: K. Kenneth Kotler **(NEF)*** 1901 Avenue of the Stars, Suite 1100 Los Angeles, CA 90067 |

☐ *Additional service per Proof of Service to be filed by Stretto*

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **September 15, 2023**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

**SERVED BY PERSONAL DELIVERY**

Honorable Sandra R. Klein
United States Bankruptcy Court
255 E. Temple Street, Suite 1582
Courtroom 1575
Los Angeles, CA 90012

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 15, 2023 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**