DAVID L. NEALE (SBN 141225)
TODD M. ARNOLD (SBN 221868)
ROBERT M. CARRASCO (SBN 334642)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: DLN@LNBYG.COM; TMA@LNBYG.COM; RMC@LNBYG.COM

Attorneys for Debtors and Debtors in Possession

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>☐ ITTELLA INTERNATIONAL LLC,<br>a California limited liability company<br>☐ ITTELLA'S CHEF, LLC,<br>a California limited liability company<br>☐ TATTOOED CHEF, INC.,<br>a Delaware corporation<br>☐ MYJOJO, INC.,<br>a Delaware corporation<br>☐ NEW MEXICO FOOD DISTRIBUTORS, INC.,<br>a New Mexico corporation<br>☐ KARSTEN TORTILLA FACTORY, LLC,<br>a New Mexico limited liability company<br>☐ BCI ACQUISITION, INC.,<br>a Delaware corporation<br>☐ TTCF-NM HOLDINGS INC.,<br>a Delaware corporation<br>☒ All Debtors<br><br>Debtors and Debtors-in-Possession. | Lead Case No.: 2:23-bk-14154-SK<br><br>Jointly Administered with Case Nos.:<br>2:23-bk-14159-SK; 2:23-bk-14161-SK;<br>2:23-bk-14157-SK; 2:23-bk-14158-SK;<br>2:23-bk-14155-SK; 2:23-bk-14156-SK; and<br>2:23-bk-14160-SK<br><br>Chapter 11 Cases<br><br>**DEBTORS' JOINT CHAPTER 11 LIQUIDATING PLAN DATED JANUARY 29, 2024**<br><br><u>Confirmation Hearing</u><br>Date:     TBD<br>Time:     TBD<br>Location:  Courtroom 1575<br>           255 East Temple Street<br>           Los Angeles, California 90012<br>           [Also VIA ZoomGov] |

# TABLE OF CONTENTS

I. DEFINITIONS AND RULES OF CONSTRUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.   Defined Terms. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.   Other Terms. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    C.   Computation of Time. . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    D.   Exhibits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

II. CLASSIFICATION AND TREATMENT OF CLAIMS . . . . . . . . . . . . . . . . . . . . . 13

    A.   What Creditors and Interest Holders Will Receive Under the Proposed
Plan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    B.   Unclassified Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    C.   Classified Claims and Interests. . . . . . . . . . . . . . . . . . . . . . 16

III. MEANS OF EFFECTUATING THE PLAN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    A.   The Intercompany Compromise. . . . . . . . . . . . . . . . . . . . . . 21

    B.   Funding for the Plan / Vesting of Assets. . . . . . . . . . . . . . . . 21

    C.   Establishment of the Liquidating Trust. . . . . . . . . . . . . . . . . 22

    D.   Liquidating Trustee / Post-Confirmation Management. . . . . . . . . . . . . 24

    E.   Cooperation with Liquidating Trustee. . . . . . . . . . . . . . . . . . 27

    F.   Funding of Post-Effective Date Plan Expenses. . . . . . . . . . . . . . . . 28

    G.   Estate Causes of Action. . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

    H.   Post-Effective Date Professional Fees. . . . . . . . . . . . . . . . . . . 32

    I.   Approval for Disposition of Assets. . . . . . . . . . . . . . . . . . . . 32

    J.   Compromise of Controversies / Bankruptcy Court Approval. . . . . . . . . 33

    K.   Resolution of Disputes. . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

    L.   Liquidating Trustee Certification / Final Decree. . . . . . . . . . . . . . 33

    M.   Other Rights, Powers and Duties of Liquidating Trustee. . . . . . . . . . . 34

N. Distributions Under the Plan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

IV. RELEASES AND EXCULPATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

A. Releases by the Debtors. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

B. Exculpation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

C. No Liability for Solicitation or Participation. . . . . . . . . . . . . . . . . 37

D. Good Faith. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

V. MISCELLANEOUS PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

A. Executory Contracts and Unexpired Leases. . . . . . . . . . . . . . . . . . 38

B. Preservation of Rights of Action. . . . . . . . . . . . . . . . . . . . . . . . . . 39

C. Exemption from Stamp, Transfer and Other Taxes. . . . . . . . . . . . . 40

D. Headings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

E. Binding Effect. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

F. Governing Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

G. Withholding, Reporting, and Payment of Taxes. . . . . . . . . . . . . . . 40

H. Other Documents and Actions. . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

I. Notices. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

J. Severability of Plan Provisions. . . . . . . . . . . . . . . . . . . . . . . . . . . 42

K. Successors and Assigns. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

L. Books and Records. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

M. Effectiveness of Court Orders. . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

N. No Waiver. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

O. Other Documents and Actions. . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

P. Inconsistencies. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Q. Implementation of Section 1142 of the Bankruptcy Code. . . . . . . . 43

R. Retention of Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

VI. EFFECTIVENESS OF THE PLAN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

    A.    Conditions Precedent. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

    B.    The Effective Date. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

    C.    Confirmation Request. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

    D.    Notice of the Effective Date. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

VII. EFFECT OF CONFIRMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

    A.    Discharge. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

    B.    Revesting of Property in the Liquidating Trust. . . . . . . . . . . . . . . . . . . 48

    C.    Withdrawal or Modification of Plan. . . . . . . . . . . . . . . . . . . . . . . . . 48

    D.    Post-Confirmation Status Report. . . . . . . . . . . . . . . . . . . . . . . . . . . 48

    E.    Quarterly Fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

    F.    Final Decree. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

Ittella International LLC ("Ittella"), Ittella's Chef, LLC ("ICLLC"), Tattooed Chef, Inc. ("TCI"), Myjojo, Inc. ("Myjojo"), New Mexico Food Distributors, Inc. ("NMFD"), Karsten Tortilla Factory, LLC ("Karsten"), BCI Acquisition, Inc. ("BCI"), and TTCF-NM Holdings Inc. ("TTCF, and, together with Ittella, ICLLC, TCI, Myjojo, NMFD, Karsten, and BCI, the "Debtors"), the Chapter 11 debtors and debtors in possession in the above-captioned, jointly administered Chapter 11 bankruptcy cases (the "Chapter 11 Cases"), hereby propose this *Joint Chapter 11 Liquidating Plan Dated January 29, 2024* (along with any amendments, modifications, supplements and exhibits hereto, collectively, the "Plan") pursuant to Section 1121(a)[1] for resolution of all Claims (as defined below) against, and interests in, the Debtors and their Estates.

The Debtors' *Disclosure Statement Describing Debtor's Joint Chapter 11 Liquidating Plan Dated January 29, 2024* (the "Disclosure Statement"), which will accompany the Plan, discusses the Debtors' history, businesses, Chapter 11 Cases, and estimates of the distributions of the Debtors' remaining assets to creditors, and contains a summary and discussion of the Plan. Holders of Claims are encouraged to read the Disclosure Statement before voting to accept or reject the Plan.

Following solicitation of acceptances for the Plan, the Debtors will seek the Bankruptcy Court's Confirmation (as defined below) of the Plan. No solicitation materials other than the Disclosure Statement and any schedules, exhibits or other documents attached thereto or referenced therein have been authorized by the Debtors or the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan. As noted in the Disclosure Statement, the Debtors and the Committees (as defined below) recommend that all creditors that receive a ballot and are eligible to vote on the Plan vote in favor of the Plan.

---

[1] Unless otherwise stated, all Section references herein are to 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

## I.   DEFINITIONS AND RULES OF CONSTRUCTION

**A.    Defined Terms.**

In addition to the terms defined above, as used herein, the following terms have the respective meanings specified below (such meanings to be equally applicable to both the singular and plural, and masculine and feminine forms of the terms defined):

1.    "Administrative Claim" means any Claim for any cost or expense of administration of the Chapter 11 Cases under Sections 503(b) and 507(a)(1), including, without limitation, any actual and necessary post-petition expenses of preserving the Estates, any actual and necessary post-petition expenses of administering and liquidating the Estates, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under Sections 330, 331, 363 or 503, and any fees or charges assessed against the Estates under 28 U.S.C. § 1930.

2.    "Allowed" means with respect to any Claim or Equity Interest: (a) a Claim that was listed in the Debtors' Schedules and that was not listed as contingent, unliquidated, or disputed; (b) a Claim or Equity Interest that is evidenced by a proof of Claim or proof of Equity Interest, as applicable, filed by the applicable Claims Bar Date (or for which Claim or Equity Interest under the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order of the Bankruptcy Court, a proof of Claim is not required to be filed); or (c) a Claim or Equity Interest allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; provided that, with respect to a Claim or Equity Interest described in clauses (a) and (b) above, such Claim or Equity Interest, as applicable, shall be considered Allowed only if and to the extent that, with respect to such Claim or Equity Interest, the Liquidating Trustee is in agreement with the amount and characterization of the Claim or Equity Interest or no objection thereto has been interposed prior to the deadline fixed by the Bankruptcy Court for voting on the Plan.  **Any Claim or Equity Interest that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no proof of Claim or proof of Equity Interest is or has been timely filed shall be expunged without further action by the Debtors and without further notice to**

**any party or action, approval, or order of the Bankruptcy Court.  Any portion of a Claim that is satisfied or released during the Chapter 11 Cases is not an Allowed Claim.**

3.      "Allowed Class __ Claim" means an Allowed Claim in the Class specified.

4.      "Assets" means all assets of the Debtors' Estates, including, but not limited to, "property of the estate" as described in Section 541 and shall, without limitation, include Cash, Estate Causes of Action, any and all claims and causes of action that may be asserted by the Debtors against any third party or third parties, proceeds of insurance and insurance policies, all rights and interests, all personal property, and all files, books and records of the Debtors' Estates. For the avoidance of doubt, it is the Debtors' intent that the term "Assets" of the Debtors' Estates be interpreted as broadly as possible.

5.      "Available Cash" means the Cash in the Liquidating Trust that is not otherwise designated by the Liquidating Trustee as Cash to be used to satisfy Allowed Secured Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, and expenses of the Liquidating Trust or otherwise subject to a reserve established by the Liquidating Trustee.

6.      "Avoidance Action" means any claim or right under the following: Sections 544, 545, 547, 548, 549, 550, 551 and 553(b); all prevailing fraudulent conveyance and fraudulent transfer laws; all non-bankruptcy laws vesting in creditors' rights to avoid, rescind, or recover on account of transfers, including, but not limited to, claims relating to illegal dividends; all preference laws; the Uniform Fraudulent Transfer Act; and California Civil Code sections 3439 and 3440, *et seq.*

7.      "Bankruptcy Court" means the United States Bankruptcy Court for the Central District of California, Los Angeles Division or, in the event such court ceases to exercise jurisdiction over the Chapter 11 Cases, such other court that exercises jurisdiction over the Chapter 11 Cases.

8.      "Bankruptcy Rules" means, collectively, (a) the Federal Rules of Bankruptcy Procedure ("FRBP"), as amended from time to time, as applicable to the Chapter 11 Cases,

and (b) the Local Bankruptcy Rules (the "LBR") applicable to cases pending before the Bankruptcy Court, as now in effect or hereafter amended.

9.      "Bar Date Order" means the order entered by the Bankruptcy Court on August 3, 2023 [Dkt. 193] setting the Claims Bar Date and Governmental Unit Bar Date.

10.     "Beneficiaries" means the Holders of Claims who are the beneficiaries of the Liquidating Trust.

11.     "Business Day" means any day which is not a Saturday, a Sunday, or a "legal holiday" as defined in Bankruptcy Rule 9006(a).

12.     "Cash" means cash or cash equivalents.

13.     "Case Closing Date" means the date on which the Bankruptcy Court enters a final decree closing the Chapter 11 Cases, in accordance with Section 350.

14.     "Chapter 11 Cases" means the cases under chapter 11 of the Bankruptcy Code, commenced by the Debtors on the Petition Date in the Bankruptcy Court, jointly administered under lead case *In re Ittella International, LLC* (Case No. 2:23-bk-14154-SK).

15.     "Claim" means (a) any right to payment from the Debtors' Estates, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtors' Estates, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

16.     "Claims Bar Date" means October 3, 2023, which is the general deadline set pursuant to the Bar Date Order for filing proofs of claim for any Claims against the Debtors that arose prior to the Petition Date and not otherwise subject to the Governmental Unit Bar Date.

17.     "Class" means one of the Classes of Claims or Classes of Equity Interests designated in the Plan.

18.     "Committees" means the Ittella Committee and the NMFD Committee.

19.     "Conditions Precedent" shall have the meaning ascribed to such term in Section VI.A of the Plan.

20.     "Confirmation" means the entry of the order by the Bankruptcy Court confirming the Plan pursuant to Section 1129.

21.     "Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

22.     "Confirmation Hearing" means the hearing before the Bankruptcy Court pursuant to Section 1129 to consider confirmation of the Plan.

23.     "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

24.     "CRO" means Edward Bidanset, the Debtors' Chief Restructuring Officer.

25.     "Disallowed Claim" means a Claim or any portion thereof that (a) has been disallowed by agreement with the creditor, (b) has been disallowed by Final Order, (c) is listed in the Schedules in an unknown amount, as zero, as contingent, disputed, or unliquidated, or is not listed in the Schedules, and as to which no proof of Claim or Administrative Claim has been Filed, or (d) has been withdrawn by the applicable creditor.

26.     "Disputed Claim" means any Claim (a) as to which a proof of Claim or an Administrative Claim has been filed and the dollar amount of such Claim is not specified in a fixed amount or (b) as to which the Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Plan and/or any order of the Bankruptcy Court, which objection or request for estimation has not been withdrawn or determined by a Final Order.

27.     "Disputed Claims Reserve" means the Cash to be set aside for, and in an amount sufficient to pay the required Distribution under the Plan to all Disputed Claims which have not been finally adjudicated as of the Effective Date and which may become Allowed Claims after the Effective Date.  The Disputed Claims Reserve may be established as a separate account, or in an account containing other funds, in the Liquidating Trustee's discretion.

6

28.    "Distribution(s)" means any transfer under the Plan of Cash or other property or instruments to a Holder of an Allowed Claim.

29.    "Distribution Date(s)" means those dates upon which the Liquidating Trustee shall make the Distributions to holders of Allowed Claims.

30.    "Dkt." means the Docket Number of a Filing in the Ittella Chapter 11 Case.  All Filings can be obtained at https://cases.stretto.com/Ittella.

31.    "Effective Date" means the first day when all the Conditions Precedent have been satisfied or waived pursuant to Section VI.A of the Plan.

32.    "Equity Interests" means any equity interest in the Debtors.

33.    "Estates" means the Debtors' estates created by Section 541(a) upon the Petition Date.

34.    "Estate Causes of Action" means any and all manner of causes of action, claims, obligations, suits, debts, judgments, demands, rights of offset or recoupment, damages (actual, compensatory or punitive), counterclaims or affirmative defenses, whatsoever, whether in law or in equity of the Debtors and Estates, including, but not limited to, Avoidance Actions and any and all claims, if any, covered by the Debtors' prepetition directors and officers insurance policy against former managers, officers, directors, employees and/or agents of the Debtor (except as such claims may be subject to release or exculpation under the Plan).  The failure by the Debtors to specifically identify any Estate Cause of Action does not constitute a waiver of such Estate Cause of Action, and all such Estate Causes of Action are expressly preserved.

35.    "Exculpated Parties" means the following: (a) the CRO, (b) Levene, Neale, Bender, Yoo & Golubchik L.L.P., (c) Rutan & Tucker LLP, (d) Grant Thornton LLP, (e) Gibson, Dunn & Crutcher LLP, (f) Fisher & Phillips LLP, (g) Loeb & Loeb LLP, (h) Brinkman Law Group, PC, (i) Dundon Advisers LLC, and (j) any other Professional retained by the Estates.

36.    "Fee Carve-Out" means the Cash retained in the debtor-in-possession bank accounts, following the Effective Date, in an amount to cover all outstanding Allowed Administrative Claims of the CRO, the Debtors' Professionals, the Committee Professionals, and any remaining employees and/or contractors of the Debtors.

37.    "File," "Filed," "Files," or "Filing" means any document(s) properly and timely filed with the Bankruptcy Court in the Chapter 11 Cases, as reflected on the official docket of the Bankruptcy Court for the Chapter 11 Cases, and served on parties, as and to the extent that such filing and service are required pursuant to the Bankruptcy Code, Bankruptcy Rules and/or order of the Bankruptcy Court.

38.    "Final Order" means an order or judgment of the Bankruptcy Court or other applicable court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; or as to which any right to appeal, reargue, rehear, or petition for certiorari shall have been waived in writing in form and substance satisfactory to the Debtors prior to the Effective Date, or the Liquidating Trustee after the Effective Date, respectively, or, in the event that an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other applicable court shall have been affirmed by the highest court to which such order or judgment was appealed or from which reargument or rehearing was sought, or certiorari shall have been denied, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired. In the event that there are no objections to Confirmation of the Plan, the Confirmation Order shall become a Final Order as set forth in Bankruptcy Rule 8002(a)(1).

39.    "First Administrative Claims Bar Date Order" means the *Order Granting Debtors' Motion To Establish A Bar Date For Filing Administrative Expense Priority Claims Pursuant To 11 U.S.C. § 503* [Dkt. 705] entered by the Bankruptcy Court.

40.    "First Administrative Claims Period" means the Petition Date through and including December 31, 2023.

41.    "First Administrative Claims Bar Date" means the January 19, 2024 deadline to file any Non-Professional Administrative Claims incurred during the First Administrative Claims Period.

42. "General Unsecured Claim" means any Claim that is not a Secured Claim, an Administrative Expense Claim, a Priority Tax Claim, or an Other Priority Claim. General Unsecured Claims include, without limitation, unsecured Claims arising from the rejection of executory contracts and unexpired leases.

43. "Governmental Unit Bar Date" means December 29, 2023, which is the deadline set pursuant to the Bar Date Order for filing proofs of claim on behalf of any governmental unit, as defined in Section 101(27), for any Claims against the Debtors that arose prior to the Petition Date.

44. "Holder" means the owner of a Claim or Equity Interest.

45. "Ittella Committee" means the Official Committees of Unsecured Creditors appointed in Ittella's Chapter 11 Case, as it may be reconstituted from time to time.

46. "Impaired" has the meaning set forth in Section 1124.

47. "GE Letter of Credit" means a Letter of Credit issued by UMB in favor of Grateful Egg, LLC in the amount of $585,900.

48. "GE Letter of Credit Funds" means the Cash held in a segregated account pursuant to the *Order Approving Second Stipulation Re Disbursement Of Sale Proceeds Following Closings* [Dkt. 609] to secure any Claims of UMB and/or Grateful Egg, LLC arising from draws on the GE Letter of Credit.

49. "Liquidating Trust" means the trust created pursuant to the Plan, Confirmation Order, and the Liquidating Trust Agreement, and created for the benefit of Holders of all Allowed Claims. Except as otherwise expressly provided in the Plan, all of the Assets of the Debtors will be transferred to the Liquidating Trust on the Effective Date of the Plan. The Liquidating Trust will continue and conclude the liquidation of such Assets and the Debtors, including the resolution of all Estate Causes of Action, and make Distributions to the Holders of Allowed Claims and pay the expenses of the Liquidating Trust, all as provided in the Plan.

50. "Liquidating Trust Agreement" means that certain liquidating trust agreement by and between the Debtors and the Liquidating Trustee to be entered into pursuant to the Plan and the Confirmation Order, as such may be amended from time to time.

51.    "Liquidating Trust Assets" means any and all Assets of the Debtors and Estates, including Cash, Estate Causes of Action and other personal and real property, all of which shall be transferred or assigned to the Liquidating Trust on the Effective Date of the Plan, free and clear of any liens or claims, except as set forth in the Disclosure Statement and/or Plan, provided the allocation of the Liquidating Trust Assets between and among the Debtors shall be as set forth in the Disclosure Statement and/or Plan.

52.    "Liquidating Trustee" means the Person selected by the Ittella Committee and designated prior to the Confirmation Hearing, and any successor trustee appointed pursuant to the Plan and Liquidating Trust Agreement, that has the powers and responsibilities set forth in the Plan, the Confirmation Order and the Liquidating Trust Agreement and in such capacity shall act as a liquidator of the Debtors and its assets for the benefit of Holders of Allowed Claims. Whenever the Liquidating Trustee is referred to herein, all such references are qualified by the Liquidating Trustee's powers, rights and obligations as set forth in the Plan and Liquidating Trust Agreement.

53.    "Liquidating Trustee Claim Objection Deadline" means the first Business Day to occur after 180 days after the Effective Date, provided, however, that such date may be extended by (a) order of the Bankruptcy Court to a later date upon motion brought by the Liquidating Trustee at any time before the occurrence thereof, or (b) in the case of any specific Claim, by agreement between the Holder of the Claim and the Liquidating Trustee. Any such later date shall then become the Liquidating Trustee Claim Objection Deadline.

54.    "Mpac" means Mpac Langen, Inc. and its parents, subsidiaries, and affiliates.

55.    "NMFD Committee" means the Official Committees of Unsecured Creditors appointed in NMFD's Chapter 11 Case, as it may be reconstituted from time to time.

56.    "Non-Professional Administrative Claim" means an Administrative Claim other than one incurred by a Professional.

57.    "Other Priority Claim" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim or Priority Tax Claim.

58.    "Person" means any individual, corporation general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, government or any political subdivision, governmental unit, official committee appointed by the UST, unofficial committee of creditors, or other entity.

59.    "Petition Date" means July 2, 2023, the date on which the Debtors filed their voluntary petitions commencing the Chapter 11 Cases.

60.    "Post-Effective Date Notice Party" has the meaning set forth in Section V.I of this Plan.

61.    "Post-Effective Date Plan Expenses" means all voluntary and involuntary costs, expenses, charges, obligations, or liabilities of any kind or nature, whether matured, unmatured, non-contingent, contingent, liquidated, or unliquidated (collectively, "Expenses") incurred after the Effective Date related to the implementation of this Plan, including, but not limited to: (a) the Expenses associated with administering this Plan, including any taxes assessed against the Liquidating Trust Assets; (b) all fees of the UST; (c) the Expenses associated with making the Distributions required by this Plan; (d) any Expenses associated with preparing and filing tax returns and paying taxes; (e) the Expenses of independent contractors and professionals providing services to the Liquidating Trustee; and (f) the fees of the Liquidating Trustee, and the reimbursement of expenses, to which the Liquidating Trustee is entitled under the Liquidating Trust Agreement.

62.    "Priority Tax Claim" means a Claim of a governmental unit of the kind specified in Section 507(a)(8).

63.    "Pro Rata," "Pro Rata Share," and "Pro Rata Basis" means, at any time, the proportion that the face amount of a Claim in a particular Class bears to the aggregate face amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class; and "face amount," as used herein, means (a) when used in reference to a Disputed Claim, the full stated liquidated amount claimed by the Holder of the Claim in any proof of Claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of

the Bankruptcy Court or other applicably bankruptcy law; and (b) when used in reference to an Allowed Claim, the allowed amount of such Claim.

64. "Professionals" means, for purposes of this Plan, any person (a) employed in accordance with an order of the Bankruptcy Court under Sections 327, 363 or 1103 and to be compensated for services under Sections 327, 328, 329, 330, 331 and 504, or (b) for which compensation or reimbursement is requested under Section 503(b)(2)-(b)(6).

65. "Rejection Damage Claim" means a Claim for any obligations or damages arising under an unexpired real-property or personal-property lease or executory contract that the Estates reject under Bankruptcy Code section 365 or pursuant to the terms of this Plan.

66. "Released Parties" means the following: (a) the CRO, (b) Levene, Neale, Bender, Yoo & Golubchik L.L.P., (c) Rutan & Tucker LLP, (d) Grant Thornton LLP, (e) Gibson, Dunn & Crutcher LLP, (f) Fisher & Phillips LLP, (g) Loeb & Loeb LLP, (h) Brinkman Law Group, PC, (i) Dundon Advisers LLC, and (j) any other Professional retained by the Estates.

67. "Schedules" means the schedules of assets and liabilities, list of equity security holders, and statement of financial affairs filed by the Debtors as required by the Bankruptcy Code and Bankruptcy Rules.

68. "Secured Claim" means a Claim against the Debtors to the extent of the value, as determined by the Bankruptcy Court pursuant to Section 506(a), of any interest in property of the Debtors' Estates securing such Claim.

69. "UMB" means UMB Bank, n.a.

70. "UST" means the United States Trustee

71. "Voting Deadline" means **5:00 p.m. (Pacific Time) on _____ 2024**, the date established by order of the Bankruptcy Court for receipt of ballots voting to accept or reject the Plan.

**B.    Other Terms.**

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. A term used herein that is not defined herein shall have the meaning ascribed to that term, if any,

in the Bankruptcy Code or Bankruptcy Rules and shall be construed in accordance with the rules of construction thereunder. The definition given to any term or provision in this Plan supersedes any different meaning that may be given to that term or provision in the Disclosure Statement. Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural. Each pronoun stated in the masculine, feminine or neuter includes each of the masculine, feminine and neuter.  Any reference to an exhibit, schedule, instrument or other document means such exhibit, schedule, instrument or other document as it has been, or may be, amended, modified, restated or supplemented as of the Confirmation Date, and any such exhibit, schedule, instrument or other document shall be deemed to be included in this Plan, regardless of when it is filed

**C.    Computation of Time.**

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of FRBP 9006(a) shall apply.

**D.    Exhibits.**

Any and all exhibits to the Disclosure Statement and Plan are incorporated into and are a part of the Plan as if set forth in full herein.

## II.    CLASSIFICATION AND TREATMENT OF CLAIMS

**A.    What Creditors and Interest Holders Will Receive Under the Proposed Plan.**

As required by the Bankruptcy Code, the Plan classifies Claims and Interests in various Classes according to their right to priority.  The Plan states whether each Class of Claims and Equity Interests is impaired or unimpaired and whether each Class is entitled to vote on the Plan. The Plan provides the treatment each Class will receive.

**B.    Unclassified Claims.**

In accordance with Section 1123(a)(1), Administrative Expense Claims and Priority Tax Claims have not been classified. Holders of Administrative Expense Claims and Priority Tax Claims do not have a right to vote to accept or reject the Plan.  However, Administrative Expense Claims and Priority Tax Claims are identified in this Disclosure Statement and the accompanying Plan, and their treatment is described, to promote  "enabl[ing] a hypothetical reasonable investor

typical of holders of claims or interests of the relevant class to make an informed judgment about the plan[.]"

1.    Administrative Expense Claims.

An Administrative Expense Claim is a Claim that is entitled to priority under Sections 503(b) and 507(a)(1).  The Administrative Expense Claims consist of: (a) the fees and expenses of the Debtors' Professionals, (b) the fees and expenses of the Committees' Professionals, and (c) if any, the Claims for goods provided and services rendered to the Debtors during the Chapter 11 Cases.  Any person or entity asserting to be a holder of an Administrative Expense Claim, including for final allowance of professional fees, shall have an additional sixty (60) calendar days after the Effective Date in which to file requests for payment of such claims in the Chapter 11 Cases, provided, however, that Holders of non-Professional Administrative Claims that were incurred or accrued between the Petition Date and December 31, 2023 that did not timely file requests for the allowance and payment of their non-Professional Administrative Claim prior to the First Administrative Claims Bar Date of January 19, 2024 are barred by the First Administrative Claims Bar Date Order from asserting such non-Professional Administrative Claim.  Pursuant to orders of the Bankruptcy Court, the Debtors have made payments to the Professionals for a portion of their fees and expenses.   The following chart lists the estimated Allowed Administrative Expense Claims against the Debtors and shows the proposed treatment of Allowed Administrative Expense Claims:

| Class Composition (Applicable Case(s) | Amount of Claims (Approx.) | Amount and Timing of Distributions | Impaired or Unimpaired | Detail on Estimated Allowed Claims | |
|---|---|---|---|---|---|
| Non-Professional Administrative Claims (All Cases) | $1,599,511.39 | Allowed Claims to be paid in full, on the later of the Effective Date or the date the Claim is Allowed (unless otherwise agreed) | Not Applicable; Not Entitled to Vote | **Creditor** | **Estimated Admin Claim** |
| | | | | 84.51 LLC | $102,550.00 |
| | | | | CARDLOCK FUELS SYSTEM, LLC | $1,530.33 |
| | | | | Green Chile Foods | $1,039,064.08 |
| | | | | GRUPPO INDUSTRIALE ALIMENTARI SURGELATI S.R.L | $35,438.09 |
| | | | | KEHE DISTRIBUTORS, LLC | $79,149.64 |
| | | | | LINEAGE LOGISTICS, LLC | $87,005.06 |
| | | | | MCMASTER-CARR SUPPLY CO | $1,807.99 |
| | | | | MPAC LANGEN INC. | $23,505.04 |
| | | | | PECO PALLET, INC. | $8,064.54 |
| | | | | PICOSO FOODS, LLC | $20,993.94 |
| | | | | RIF V-Paramount Business Center LLC | $21,977.56 |
| | | | | TUSCANY CHEESE, LLC | $176,413.30 |
| | | | | | *See also* Claims Chart. |

14

| | | | | |
|---|---|---|---|---|
| Professional Administrative Claims (All Cases) | $1,800,000.00 | Allowed Claims to be paid in full, on the later of the Effective Date or the date the Claim is Allowed (unless otherwise agreed) | Not Applicable; Not Entitled to Vote | Unpaid Professional Fees from First Interim Fee Applications as follows: |

| Professional | Balance Owed |
|---|---|
| LNBYG | $433,899.39 |
| Rutan | $54,333.44 |
| GT | $102,862.47 |
| Loeb | $204,811.79 |
| Dundon | $52,983.42 |
| BLG | $149,541.87 |
| **TOTALS** | **$998,432.39** |

Plus an estimated additional $801,567.61 in estimated additional Professional Administrative Claims incurred through the Effective Date

| | | | | |
|---|---|---|---|---|
| **TOTAL** | **$3,399,511.39** | | | |

2.    Priority Tax Claims.

A Priority Tax Claim is a claim of a governmental unit of a type that is entitled to priority under Section 507(a)(8).  The following chart lists the estimated Allowed Priority Tax Claims against the Debtors and shows the proposed treatment of Allowed Priority Tax Claims:

| Class Composition (Applicable Case(s)) | Amount of Claims (Approx.) | Amount and Timing of Distributions | Impaired or Unimpaired | Detail on Estimated Allowed Claims |
|---|---|---|---|---|
| Priority Tax Claims (All Cases) | $125,610.04 | Allowed Claims to be paid in full, on the later of the Effective Date or the date the Claim is Allowed (unless otherwise agreed) | Not Applicable; Not Entitled to Vote | (see table below) |

| Creditor | Estimated Priority Claim |
|---|---|
| CALIFORNIA DEPARTMENT OF MOTOR VEHICLES [DMV] | $397.00 |
| California Department of Tax and Fee Administration | $4,246.71 |
| Franchise Tax Board | $800.00 |
| Franchise Tax Board | $800.00 |
| Franchise Tax Board | $800.00 |
| Franchise Tax Board | $800.00 |
| Franchise Tax Board | $1,707.56 |
| Franchise Tax Board | $2,751.76 |
| LOS ANGELES COUNTY TREASURER AND TAX COLLECTOR | $2,444.88 |
| NM TAXATION & REVENUE | $50.72 |
| NM TAXATION & REVENUE | $4,030.30 |
| NM TAXATION & REVENUE | $5,381.48 |
| NM TAXATION & REVENUE | $14,785.49 |
| NM TAXATION & REVENUE | $49,644.11 |
| STATE OF FLORIDA-DEPARTMENT OF REVENUE | $149.93 |
| State of New Jersey - Division of Taxation [NJ Division of Taxation] | $6,206.78 |
| TENNESSEE DEPARTMENT OF | $1,186.25 |
| TENNESSEE DEPARTMENT OF | $1,499.48 |
| TENNESSEE DEPARTMENT OF | $2,255.86 |
| TENNESSEE DEPARTMENT OF | $3,987.91 |
| TENNESSEE DEPARTMENT OF | $4,062.50 |
| TEXAS COMPTROLLER OF PUBLIC | $0.00 |
| TEXAS COMPTROLLER OF PUBLIC | $17,621.32 |
| | **$125,610.04** |

*See also* Claims Chart.

**C.    Classified Claims and Interests.**

    1.    <u>Secured Claim.</u>

There is one Class with a Secured Claim under the Plan.  The following chart lists the one Class with a Secured Claim and shows the estimated amount of the Allowed Secured Claim in such Class and the proposed treatment of the Allowed Secured Claim in the Class:

| Class | Class Composition (Applicable Case(s) | Amount of Claim (Approx.) | Amount and Timing of Distributions | Impaired or Unimpaired |
|---|---|---|---|---|
| 1 | UMB Secured Claim for any draws upon and/or expenses related to the GE Letter of Credit issued by UMB in favor of Grateful Egg, LLC in the amount of $585,900 (Ittella) | $150,000.00 (This Claim could be up to the full amount of the $585,900 GE Letter of Credit; the $150,000 amount is the Debtors' estimation of the allowable Grateful Egg, LLC claim to be drawn from the GE Letter of Credit.) | Allowed Claims to be paid in full, on the later of the Effective Date or the date the Claim is Allowed (unless otherwise agreed) | Unimpaired; Not Entitled to Vote |

    2.    <u>General Unsecured Claims.</u>

There are eight Classes of General Unsecured Claims under the Plan – one Class for each Debtor.  The following chart lists the eight Classes of General Unsecured Claims and shows the estimated amount of Allowed General Unsecured Claims in each Class and the proposed treatment of the Allowed General Unsecured Claims in each Class:

| Class | Class Composition (Applicable Case(s) | Amount of Claims (Approx.) | Amount and Timing of Distributions | Impaired or Unimpaired |
|---|---|---|---|---|
| 3 | General Unsecured Claims (BCI) | $3,334,120.47 | Holders of Allowed Claims paid up to 5% of the amount of Allowed Claim as soon as practicable from Available Cash | Impaired; Entitled to Vote |
| 4 | General Unsecured Claims (Ittella) | $27,116,752.23 | Holders of Allowed Claims shall receive a Pro Rata Share of Cash remaining after (1) the payment in full of all Allowed Secured Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims and (2) the payment of up to 5% of the amount of Allowed General Unsecured Claims in Classes 3 and 5-10 as soon as practicable from Available Cash | Impaired; Entitled to Vote |
| 5 | General Unsecured Claims (ICLLC) | $682.02 | Holders of Allowed Claims paid up to 5% of the amount of Allowed Claim as soon as practicable from Available Cash | Impaired; Entitled to Vote |
| 6 | General Unsecured Claims (Karsten) | $150.00 | Holders of Allowed Claims paid up to 5% of the amount of Allowed Claim as soon as practicable from Available Cash | Impaired; Entitled to Vote |

| Class | Class Composition (Applicable Case(s) | Amount of Claims (Approx.) | Amount and Timing of Distributions | Impaired or Unimpaired |
|-------|------|------|------|------|
| 7 | General Unsecured Claims (Myjojo) | $719.64 | Holders of Allowed Claims paid up to 5% of the amount of Allowed Claim as soon as practicable from Available Cash | Impaired; Entitled to Vote |
| 8 | General Unsecured Claims (NMFD) | $6,603,488.46 | Holders of Allowed Claims paid up to 5% of the amount of Allowed Claim as soon as practicable from Available Cash | Impaired; Entitled to Vote |
| 9 | General Unsecured Claims (TCI) | $8,965,635.37 | Holders of Allowed Claims paid up to 5% of the amount of Allowed Claim as soon as practicable from Available Cash | Impaired; Entitled to Vote |
| 10 | General Unsecured Claims (TTCF) | $292.38 | Holders of Allowed Claims paid up to 5% of the amount of Allowed Claim as soon as practicable from Available Cash | Impaired; Entitled to Vote |
| | | $46,021,840.57 | | |

3.      Equity Interest Holders.

There are eight Classes of Equity Interest Holders under the Plan – one Class for each Debtor.  The following chart lists the eight Classes of Equity Interest Holders and shows the proposed treatment of the Equity Interests in each Class:

| Class | Class Composition (Applicable Case(s) | Amount of Claims (Approx.) | Amount and Timing of Distributions | Impaired or Unimpaired |
|---|---|---|---|---|
| 11 | Equity Interests (BCI) | N/A | Holders of Equity Interests in this Debtor will not receive anything under the Plan | Impaired; Conclusively Presumed to Have Rejected the Plan; Not Entitled to Vote |
| 12 | Equity Interests (Ittella) | N/A | Holders of Equity Interests in this Debtor will not receive anything under the Plan | Impaired; Conclusively Presumed to Have Rejected the Plan; Not Entitled to Vote |
| 13 | Equity Interests (ICLLC) | N/A | Holders of Equity Interests in this Debtor will not receive anything under the Plan | Impaired; Conclusively Presumed to Have Rejected the Plan; Not Entitled to Vote |
| 14 | Equity Interests (Karsten) | N/A | Holders of Equity Interests in this Debtor will not receive anything under the Plan | Impaired; Conclusively Presumed to Have Rejected the Plan; Not Entitled to Vote |
| 15 | Equity Interests (Myjojo) | N/A | Holders of Equity Interests in this Debtor will not receive anything under the Plan | Impaired; Conclusively Presumed to Have Rejected the Plan; Not Entitled to Vote |

| Class | Class Composition (Applicable Case(s) | Amount of Claims (Approx.) | Amount and Timing of Distributions | Impaired or Unimpaired |
|---|---|---|---|---|
| 16 | Equity Interests (NMFD) | N/A | Holders of Equity Interests in this Debtor will not receive anything under the Plan | Impaired; Conclusively Presumed to Have Rejected the Plan; Not Entitled to Vote |
| 17 | Equity Interests (TCI) | N/A | Holders of Equity Interests in this Debtor will not receive anything under the Plan | Impaired; Conclusively Presumed to Have Rejected the Plan; Not Entitled to Vote |
| 18 | Equity Interests (TTCF) | N/A | Holders of Equity Interests in this Debtor will not receive anything under the Plan | Impaired; Conclusively Presumed to Have Rejected the Plan; Not Entitled to Vote |

## III.    MEANS OF EFFECTUATING THE PLAN

On or soon as practicable after the Effective Date, the following shall occur with respect to the implementation of the Plan: (1) all acts, documents and agreements appropriate to implement the Plan shall be executed, (2) the Liquidating Trustee, as disbursing agent under the Plan, shall make all Distributions required to be made on or about the Effective Date of the Plan in accordance with the terms and conditions of the Plan, and (3) the Liquidating Trustee, as disbursing agent under the Plan, shall fund reserves required to be funded pursuant to the Plan. Upon the Effective Date, all transactions and matters provided for under the Plan shall be deemed to have been authorized and approved by the Debtors without any requirement of further action by the Debtor, or Holders of Equity Interests in the Debtors.

**A.      The Intercompany Compromise.**

The Confirmation Order shall approve the Intercompany Compromise whereby (1) all Intercompany Claims will be disallowed and (2) the Debtors' Cash, including any that is on hand on the Effective Date or recovered thereafter, will be consolidated into Ittella, provided that (3) Ittella shall pay each Debtor funds sufficient to pay (a) in full, the Allowed Secured Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims and (b) a 5% distribution to the holders of Allowed General Unsecured Claims.

**B.      Funding for the Plan / Vesting of Assets.**

Unless otherwise expressly provided under the Plan, on the Effective Date, the Debtors' Assets, including, without limitation, all Estate Causes of Action, will vest in the Liquidating Trust free and clear of all claims, liens, encumbrances, charges and other interests, subject to the provisions of the Plan.  On and after the Effective Date, the transfer of the Debtors' Assets from the Estates to the Liquidating Trust will be deemed final and irrevocable and Distributions may be made from the Liquidating Trust.

In connection with the foregoing:

1.      On the Effective Date, the appointment of the Liquidating Trustee shall become effective and the Liquidating Trustee shall begin to administer the Liquidating Trust pursuant to the terms of the Liquidating Trust Agreement and the Plan and may use, acquire and dispose of property of the Liquidating Trust free of any restrictions imposed under the Bankruptcy Code.  The Liquidating Trustee shall have the rights, powers and duties provided for by the Plan, the Liquidating Trust Agreement, and by the Confirmation Order.  The Liquidating Trustee, in the exercise of its reasonable business judgment, shall be responsible for liquidating the remaining assets of the Debtors, winding up the financial affairs of the Debtors, and for making Distributions to Holders of Claims in as efficient, effective and economical manner as is reasonably practicable so as to produce for Holders of Claims as favorable a recovery on their Claims as is reasonably possible under the circumstances of the Chapter 11 Cases.

2.      The Confirmation Order will provide the Liquidating Trustee with express authority to convey, transfer and assign any and all of the Liquidating Trust Assets and to take all actions necessary to effectuate same and to prosecute, settle and compromise (including, without limitation, by set-off) any and all Estate Causes of Action and Disputed Claims, without any need for notice to creditors or order or approval of the Bankruptcy Court.

3.      As of the Effective Date, the Liquidating Trust Assets will be free and clear of all liens, claims and interests of Holders of Claims and Equity Interests, except as otherwise provided in the Plan.

4.      On the Effective Date, the Debtors shall retain, and not transfer to the Liquidating Trust, Cash in an amount to cover all outstanding Administrative Claims, whether actual, estimated, or unpaid, of the CRO, the Debtors' Professionals, the Committees' Professionals, and remaining employees and/or contractors (the "Fee Carve-Out").  The Fee Carve-Out will remain in the debtor-in-possession bank accounts, under the control of the CRO, until orders on final fee applications have been entered in the Bankruptcy Cases for such Professionals or the Effective Date for the CRO and remaining employees and/or contractors.  Any funds remaining from the Fee Carve-Out, after payment in full, shall be turned over and transferred to the Liquidating Trust.  Likewise, in the event the Fee Carve-Out is inadequate to cover all outstanding Administrative Claims of the CRO, the Debtors' Professionals, the Committees' Professionals, and remaining employees and/or contractors, the Liquidating Trustee shall transfer to the debtor-in-possession bank accounts Cash in an amount to pay all outstanding Administrative Claims of the foregoing parties in full.

**C.    Establishment of the Liquidating Trust.**

1.    Generally.

On the Effective Date, the Liquidating Trust Agreement will become effective, and, if not previously signed, the Debtors and the Liquidating Trustee will execute the Liquidating Trust Agreement.  The Liquidating Trust is organized and established as a trust for the benefit of the

Beneficiaries and is intended to qualify as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d).

2.      Beneficiaries.

In accordance with Treasury Regulation Section 301.7701-4(d), the Beneficiaries of the Liquidating Trust will be the Holders of all Allowed Claims against the Debtors.  The Holders of such Allowed Claims will receive an allocation of the Liquidating Trust Assets as provided for in the Plan and the Liquidating Trust Agreement. The Beneficiaries of the Liquidating Trust shall be treated as the grantors and owners of such Beneficiaries' respective portion of the Liquidating Trust.

3.      Implementation of the Liquidating Trust.

On the Effective Date, the Debtors, on behalf of the Estates, and the Liquidating Trustee will be authorized and directed to take all such actions as required to transfer to the Liquidating Trust, from the Debtors and Estates, the Debtors' Assets.  From and after the Effective Date, the Liquidating Trustee will be authorized to, and will, take all such actions to implement the Liquidating Trust Agreement and the provisions of the Plan as are contemplated to be implemented by the Liquidating Trustee, including, without limitation, directing Distributions to Holders of Allowed Claims, objecting, compromising and settling Claims (including, without limitation, exercising set-off rights and/or seeking the subordination and/or reclassification of Claims), prosecuting or otherwise resolving Estate Causes of Action and causing Distributions from the Liquidating Trust to be made to the Beneficiaries.  The funding of the Liquidating Trust will be from the Debtors' Cash on hand as of the Effective Date and the proceeds of the liquidation by the Liquidating Trustee of any other Liquidating Trust Assets.

4.      Transfer of the Debtors' Assets.

On the Effective Date, pursuant to the Plan and Sections 1123, 1141 and 1146(a), the Debtors are authorized and directed to transfer, grant, assign, convey, set over, and deliver to the Liquidating Trustee all of the Debtors' and Estates' right, title and interest in and to their Assets, including all Estate Causes of Action, free and clear of all liens, Claims, encumbrances or interests of any kind in such property, except for the Fee Carve-Out or as otherwise expressly

provided in the Plan.  To the extent required to implement the transfer of the Debtors' Assets from the Debtors and Estates to the Liquidating Trust, all Persons will cooperate with the Debtors and Estates to assist the Debtors and Estates to implement said transfers.

        5.     <u>Provisions Relating to Federal Income Tax Compliance.</u>

A transfer to the Liquidating Trust shall be treated for all purposes of the Internal Revenue Code of 1986, as amended (the "<u>Internal Revenue Code</u>"), as a transfer to creditors to the extent creditors are Beneficiaries. For example, such treatment shall apply for purposes of Internal Revenue Code sections 61(a)(12), 483, 1001, 1012 and 1274.  Any such transfer shall be treated for federal income tax purposes as a deemed transfer to the beneficiary-creditors followed by a deemed transfer by the beneficiary-creditors to the Liquidating Trusts.  The Beneficiaries of the Liquidating Trust shall be treated for federal income tax purposes as the grantors and deemed owners of the Liquidating Trust.

**D.**    **Liquidating Trustee / Post-Confirmation Management.**

        1.     <u>Representative of the Estates.</u>

The Ittella Committee shall identify the Liquidating Trustee in its sole discretion subject to consultation with the Debtors and the NMFD Committee.  The Liquidating Trustee will be appointed as the representative of the Debtors' Estates pursuant to Sections 1123(a)(5), (a)(7) and (b)(3)(B) and as such will be vested with the authority and power (as further detailed in the Liquidating Trust Agreement) to take all actions, including, without limitation, on behalf of the Debtors and the Liquidating Trust, (i) to object to, settle and compromise Claims (including any Claim for payment of any Administrative Expense) against the Debtors (including, without limitation, exercising set-off rights and/or seeking the subordination and/or reclassification of Claims) and Equity Interests in the Debtors; (ii) to administer, investigate, prosecute, settle and abandon all Estate Causes of Action assigned to the Liquidating Trust; (iii) to make Distributions provided for in the Plan, including, but not limited to, on account of Allowed Claims; and (iv) to take such action as required to administer, wind-down, and close the Chapter 11 Cases.

Except only for the filing of a final decree to close the Chapter 11 Case pursuant to FRBP 3022, the Liquidating Trustee may take, as representative of the Estates, all acts to implement and

consummate the Plan and the Liquidating Trust Agreement, including, without limitation, the acts set forth in this Section III of the Plan, without any need for notice to creditors or order or approval of the Bankruptcy Court.  As the representative of the Estates, the Liquidating Trustee will be vested with all of the rights and powers of the Debtors and Estates with respect to all Estate Causes of Action assigned and transferred to the Liquidating Trust, and the Liquidating Trustee will be substituted in place of the Debtors and Estates, as applicable, as the party in interest in all such litigation pending as of the Effective Date.

From and after the Effective Date, the Liquidating Trustee shall, without any further notice or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation and consummation of the Plan and Liquidating Trust Agreement incurred by the Liquidating Trust or any professionals employed by the Liquidating Trust.

2.    <u>No Liability of the Liquidating Trustee.</u>

To the maximum extent permitted by law, the Liquidating Trustee, its employees, officers, directors, agents, members, and representatives, and professionals employed or retained by the Liquidating Trustee (the "<u>Liquidating Trustee's Agents</u>"), will not have or incur liability to any Person for an act taken or omission made in good faith in connection with or related to the administration of the Liquidating Trust Assets, the implementation of the Plan and the Distributions made thereunder or Distributions made under the Liquidating Trust Agreement; **provided, however, that the foregoing limitation shall not apply to any damages suffered or incurred by any Holder of a Claim or Beneficiary that are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the fraud, gross negligence, willful misconduct, or from profit derived from a breach of trust by the Liquidating Trustee or the Liquidating Trustee's Agents**.  The Liquidating Trustee, the Liquidating Trustee's Agents, and their respective employees, officers, directors, agents, members, and representatives, and professionals employed or retained by any of them, will in all respects be entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities under the Plan and the Liquidating Trust Agreement.  Entry of the

Confirmation Order constitutes a judicial determination that the exculpation provision contained in this Section of the Plan is necessary to, *inter alia*, facilitate Confirmation and feasibility and to minimize potential claims arising after the Effective Date for indemnity, reimbursement or contribution from the Estate, or the Liquidating Trust, or their respective property. The entry of the Confirmation Order confirming the Plan will also constitute a res judicata determination of the matters included in the exculpation provisions of the Plan. Notwithstanding the foregoing, nothing herein or in this Section of the Plan will alter any provision in the Liquidating Trust Agreement that provides for the potential liability of the Liquidating Trustee to any Person.

3.    <u>Compensation of Liquidating Trustee/Removal of Liquidating Trustee.</u>

On the Effective Date of the Plan, the Liquidating Trustee shall be appointed to serve under the Plan and the Liquidating Trust Agreement. The Liquidating Trustee's compensation shall be as provided in the Liquidating Trust Agreement. The Liquidating Trustee shall serve during the term of the Plan; provided, however, that, upon motion made with notice and an opportunity for a hearing given to the Post-Effective Date Notice Parties, any party-in-interest shall be entitled to request, for cause shown, that the Bankruptcy Court terminate the employment of the Liquidating Trustee and replace it with another Person, who if appointed by Final Order of the Bankruptcy Court, will have all of the rights, powers and duties provided to the Liquidating Trustee by the Plan, the Liquidating Trust Agreement, the Confirmation Order and by the provisions of the Final Order of the Bankruptcy Court appointing such replacement Liquidating Trustee.

4.    <u>Creation of the Oversight Committee.</u>

On the Effective Date, a post-confirmation oversight committee (the "<u>Oversight Committee</u>") shall be appointed to monitor the Liquidating Trustee's compliance with the terms of the Plan following the Effective Date. The Oversight Committee shall be chosen by and comprised of the members of the Committees holding Allowed Claims with at least one member from the NMFD Committee and at least two members from the Ittella Committee, provided that, if no member of the NMFD Committee is able and willing to serve, the Oversight Committee can be made up solely of members of the Ittella Committee. In the event that at least three (3)

members of the Committees are unable or unwilling to commit to serve on the Oversight Committee by the Effective Date, the requirement to establish the Oversight Committee will be deemed waived.

The Liquidating Trustee shall deliver quarterly reports to the Oversight Committee setting forth the actual financial performance of the Liquidating Trust, with the first quarterly report due thirty (30) days after the end of the first quarterly period following the Effective Date, and each subsequent quarterly report due every three (3) months thereafter.

5.    Resignation of the Liquidating Trustee.

The Liquidating Trustee may resign by giving not less than thirty (30) days' prior written notice thereof to the parties entitled to notice under Section V.I of the Plan.   The resignation will be effective on the later of: (a) the date specified in the notice; (b) the date that is thirty (30) days after the date the notice is delivered; and (c) the date the successor Liquidating Trustee accepts his or her appointment as such. In the event the original Liquidating Trustee resigns pursuant to the Plan and Liquidating Trust Agreement, the Oversight Committee shall choose and appoint the successor Liquidating Trustee.   Any successor Liquidating Trustee appointed hereunder shall execute an instrument accepting such appointment and shall deliver such acceptance to the Bankruptcy Court.   Thereupon, such successor Liquidating Trustee shall, without any further act, become vested with all of the properties, rights, powers, trusts and duties of his or her predecessor in the Liquidating Trust with like effect as if originally named herein; provided, however, that the resigning Liquidating Trustee shall, nevertheless, when requested in writing by the successor Liquidating Trustee, execute and deliver any reasonable instrument or instruments conveying and transferring to such successor Liquidating Trustee all the estates, properties, rights, powers and trusts of the removed or resigning Liquidating Trustee.

**E.    Cooperation with Liquidating Trustee.**

All Holders of Claims, Holders of Equity Interests and other parties-in-interest shall cooperate with the Liquidating Trustee by executing any documents, and by taking any acts, appropriate to implement the provisions of the Plan.

**F.      Funding of Post-Effective Date Plan Expenses.**

The Liquidating Trust shall be entitled to incur, and to be reimbursed for, Post-Effective Plan Expenses in performing its duties and obligations under the Plan and Liquidating Trust Agreement. All Post-Effective Date Plan Expenses shall be expenses of the Liquidating Trust. The Liquidating Trustee shall have no personal liability for any Post-Effective Date Plan Expenses. The Liquidating Trustee shall disburse funds from the Liquidating Trust Assets for the purpose of funding the Post-Effective Date Plan Expenses.

**G.      Estate Causes of Action.**

The right to enforce, file, litigate, prosecute, settle, adjust, retain, enforce, collect and abandon on behalf of the Debtors and the Estates any and all Estate Causes of Action, including, but not limited to, any Avoidance Actions, is deemed automatically transferred on the Effective Date from the Estates to the Liquidating Trustee.

As of the Effective Date, the Liquidating Trustee shall be authorized to exercise and to perform the rights, powers and duties held by the Estates with respect to the Estate Causes of Action, and, from and after the Effective Date, the Liquidating Trustee, shall have the sole and exclusive right, to file, litigate, prosecute, settle, adjust, retain, enforce, collect and abandon claims and interests of the Estates with respect to the Estate Causes of Action, without the consent or approval of any third party, and without any further approval or order of the Bankruptcy Court.

The Liquidating Trustee shall make the decision, in the exercise of its business judgment, whether to prosecute or to continue to prosecute any Estate Cause of Action.   This decision shall be based, in part, upon the Liquidating Trustee's evaluation of the merits of the Estate Cause of Action as well as the costs required to prosecute such Estate Cause of Action taking into account the resources available to make Distributions to Creditors.   The Liquidating Trustee, shall be entitled to determine, in the exercise of its business judgment, not to prosecute, or to abandon, any Estate Cause of Action.

The Liquidating Trustee may retain professionals to represent it in prosecuting Estate Causes of Action, including professionals who were employed by the Debtors or the Committees in the Chapter 11 Cases. The Liquidating Trustee shall determine the terms of the retention of

professionals, in the exercise of its business judgment, and shall be entitled to retain counsel on a contingency fee basis to prosecute some or all of the Estate Causes of Action.

Unless an Estate Cause of Action is expressly waived, relinquished, released, compromised, or settled in the Plan or in any Final Order, such Estate Cause of Action is expressly reserved for later adjudication by the Liquidating Trustee (including, without limitation, any Estate Causes of Action of which the Debtors presently may be unaware, or which may arise or exist by reason of facts or circumstances unknown to the Debtors at this time, or facts or circumstances which may change or be different from those which the Debtors now believes to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to the Liquidating Trustee's prosecution of Estate Causes of Action based on the Disclosure Statement, the Plan, or the Confirmation Order. Without limiting the generality of the foregoing, any Person with respect to which the Debtors have incurred an obligation (whether on account of services, purchase or sale of property, or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtor, or who has transacted business with the Debtors, should assume that such obligation, transfer, or transaction may be evaluated by the Liquidating Trustee subsequent to the Effective Date and may be the subject of an Avoidance Action or other action or proceeding filed after the Effective Date.

**THE DEBTORS HAVE NOT COMPLETED THEIR INVESTIGATION REGARDING THE EXISTENCE OF ESTATE CAUSES OF ACTION. THE INVESTIGATION IN THIS REGARD IS ONGOING. AS A RESULT, ALL PARTIES-IN-INTEREST ARE HEREBY ADVISED THAT, NOTWITHSTANDING THE FACT THAT THE EXISTENCE OF ANY PARTICULAR ESTATE CAUSE OF ACTION MAY NOT BE LISTED, DISCLOSED OR SET FORTH IN THE PLAN, AN ESTATE CAUSE OF ACTION MAY BE FILED AGAINST ANY CREDITOR OR OTHER PARTY, EXCEPT FOR ANY RELEASED OR EXCULPATED PARTY, AS THE LIQUIDATING TRUSTEE**

**MAY DETERMINE, IN THE EXERCISE OF ITS SOLE AND ABSOLUTE DISCRETION.**

     1.    <u>Prosecution of Estate Causes of Action by Liquidating Trustee.</u>

Pursuant to the Confirmation Order, on the Effective Date, the Debtors irrevocably assign, transfer and convey to the Liquidating Trustee the right to manage and control all property of the Estates, including, but not limited to, all Estate Causes of Action. Subject to the provisions of the Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall have the sole power and authority to prosecute, compromise or otherwise resolve after the Effective Date any and all such Estate Causes of Action, with all recoveries derived therefrom to be included within the Liquidating Trust Assets.

     2.    <u>Existing and Potential Estate Causes of Action.</u>

Due to the size, nature and scope of the Debtors' business operations and the multitude of business transactions therein, there may be Estate Causes of Actions that currently exist, or may subsequently arise, in addition to the matters identified herein.  The Debtors are not, and it should not be assumed that, because any existing or potential Estate Causes of Action have not yet been pursued or have not yet been identified by the Debtors, any such Estate Causes of Action have been waived.  Under the Plan, the Liquidating Trust retains all rights to pursue any and all Estate Causes of Action to the extent the Liquidating Trustee deems appropriate (under any theory of law or equity, including, without limitation, the Bankruptcy Code and any applicable local, state, or federal law, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Case).  Existing or potential Estate Causes of Action that may be pursued by the Liquidating Trustee after the Effective Date, include, without limitation, (i) any and all Estate Causes of Action pursuant to any applicable section of the Bankruptcy Code, including, but not limited to, (a) any claims of the Debtors arising under Section 362; (b) turnover claims arising under Sections 542 or 543; and (c) any Avoidance Actions; (ii) objections to Claims; (iii) claims that the Estate is entitled to set off or recoup against parties with Claims against the Estates; and (iv) any action for equitable subordination of any Claim against the Estates pursuant to Section 510.

Moreover, the Liquidating Trustee may pursue existing or potential Estate Causes of Action related to any other litigation or Estate Causes of Action, whether legal, equitable, or statutory in nature, arising out of, or in connection with, the Debtors' business, assets, or operations, or otherwise affecting the Debtors, including without limitation, possible claims against the following types of parties for the following types of claims: (a) possible claims against vendors, customers, or suppliers for warranty, indemnity, charge back/set-off issues, overpayment or duplicate payment issues, unpaid PACA claims, and collections/accounts receivable matters; (b) possible claims against persons or parties for wrongful or improper termination of services or goods to the Debtors; (c) failure of any persons or parties to fully perform under contracts with the Debtors before the assumption or rejection of such contracts; (d) possible claims for deposits or other amounts owed by any creditor, lessor, supplier, vendor, factor, or other person; (e) actions against insurance carriers relating to coverage, indemnity, or other matters; (f) counterclaims and defenses relating to Claims against the Debtor; (g) possible claims against local, state, and federal taxing authorities (including, without limitation, any claims for refunds of overpayments, challenges to audits, assessments, penalties, interest or any other obligations imposed by governmental agencies); (h) except as otherwise previously released or settled, possible claims against secured creditors, including, without limitation, claims relating to the inclusion of improper charges, fees, interest, penalties in any alleged Secured Claim and the nature, extent, priority and validity of any lien; and (j) contract, tort, or equitable claims that may exist or subsequently arise.

**THE LIQUIDATING TRUSTEE WILL DECIDE WHETHER TO PURSUE ESTATE CAUSES OF ACTION. THE LIQUIDATING TRUSTEE MAY SEEK TO RETAIN COUNSEL ON AN HOURLY OR CONTINGENCY BASIS TO PROSECUTE SOME OR ALL OF SUCH ESTATE CAUSES OF ACTION OR MAY DECIDE NOT TO PURSUE THEM AT ALL. THE LIQUIDATING TRUSTEE, ITS EMPLOYEES, CONTRACTORS, OFFICERS, DIRECTORS, SUCCESSORS, AND ASSIGNS SHALL NOT HAVE ANY LIABILITY ARISING OUT OF THE LIQUIDATING TRUSTEE'S**

**GOOD FAITH DETERMINATION OF WHETHER OR NOT TO PURSUE PROSECUTION OF ANY CAUSE OF ACTION.**

**H.    Post-Effective Date Professional Fees.**

The Liquidating Trustee may employ, without any need to give notice to Holders of Claims or other parties-in-interest or obtain any approval of the Bankruptcy Court, any professional to aid the Liquidating Trustee in performing the Liquidating Trustee's duties under the Plan or the Liquidating Trust Agreement, as the Liquidating Trust deems appropriate in the exercise of its sole and absolute discretion, including professionals who were employed by the Debtors or the Committees in the Chapter 11 Cases. Any professional employed by the Liquidating Trustee after the Effective Date shall be entitled to obtain from the Liquidating Trustee payment of the professional's fees and costs as a Post-Effective Date Plan Expense, in the ordinary course, without any need to give notice to Holders of Claims or other parties-in-interest or to obtain any approval or order of the Bankruptcy Court. Notwithstanding the foregoing, if the Liquidating Trustee should fail to pay any post-Effective Date fees and costs of a professional entitled to such payment, within thirty (30) days after the professional's rendering of its billing statement, the professional shall be entitled to seek, by application filed in accordance with the Bankruptcy Rules, an order of the Bankruptcy Court requiring the Liquidating Trustee to pay to the Professional its fees and costs.

**I.    Approval for Disposition of Assets.**

From and after the Effective Date, the Liquidating Trustee shall be entitled to sell, transfer, assign, encumber or otherwise dispose of any interest in any of the Liquidating Trust Assets, without any need to give notice to Holders of Claims or parties-in-interest or to obtain any approval or order of the Bankruptcy Court for the disposition of any Asset for an amount equal to or less than $50,000.00, regardless of estimated value. Notwithstanding the foregoing, the Liquidating Trustee shall be entitled to seek, from the Bankruptcy Court, an order authorizing the sale of any Liquidating Trust Asset free and clear of liens pursuant to the provisions of Section 363(f).

**J.      Compromise of Controversies / Bankruptcy Court Approval.**

From and after the Effective Date, the Liquidating Trustee shall be entitled to compromise any objections to a Disputed Claim, or any controversies relating to Estate Causes of Action or other litigation pending after the Confirmation Date, without any need to give notice to creditors or parties-in-interest or to obtain any approval or order of the Bankruptcy Court for the settlement of any Disputed Claim or Estate Causes of Action in a settlement amount equal to or less than $50,000.00, regardless of demand or estimated claim value.  Nothing contained in the Plan shall be deemed to impair in any manner the right of the Liquidating Trustee to seek at any time after the Effective Date orders of the Bankruptcy Court approving actions to be taken, or granting relief, consistent with the Plan as may be necessary or desirable to effectuate the provisions of the Plan.

**K.      Resolution of Disputes.**

In the event that a dispute should arise between the Liquidating Trustee and any party-in-interest in the Chapter 11 Cases regarding any matters pertaining to the Plan, the Liquidating Trust Agreement or pertaining to the Liquidating Trustee's performance of its duties and exercise of its rights, powers and remedies under the Plan, either of them may request, pursuant to the provisions of the Bankruptcy Rules, that the Bankruptcy Court resolve the merits of such dispute.

**L.      Liquidating Trustee Certification / Final Decree.**

On or before the date upon which the Liquidating Trustee determines, in the exercise of its sole and absolute discretion, that all Estate Causes of Action and objections to Disputed Claims have been resolved by Final Order, that all other Liquidating Trust Assets have been liquidated or otherwise disposed of, and that all Distributions required to be made under the Plan have been made or that final Distributions are being made or will be made within fourteen (14) days or as soon thereafter as is practicable by the Liquidating Trustee, the Liquidating Trustee shall file with the Bankruptcy Court and serve upon the Office of the United States Trustee and any other Post-Effective Date Notice Party a certification attesting to such determination ("Liquidating Trustee Certification").

Unless earlier filed by the Liquidating Trustee, by the sixtieth (60th) day after the filing of the Liquidating Trustee Certification, the Liquidating Trustee shall file, in accordance with FRBP 3022, an application with the Bankruptcy Court to obtain a final decree to close the Case.

**M.    Other Rights, Powers and Duties of Liquidating Trustee.**

In addition to the rights, powers and duties granted expressly to the Liquidating Trustee pursuant to the Plan, the Liquidating Trustee shall have such other rights, powers and duties that are appropriate to implement and to carry out the provisions of the Plan for the benefit of Holders of Claims that are not inconsistent with the provisions of the Plan.

**N.    Distributions Under the Plan.**

1.    <u>In General.</u>

Except as otherwise provided herein, or as may be ordered by the Bankruptcy Court, Distributions to be made on account of Allowed Claims, General Unsecured Claims, shall be made on or soon as reasonably practicable after the Effective Date.  The date(s) for Distributions to be made on account of Allowed General Unsecured Claims shall be selected by the Liquidating Trustee in accordance with the Liquidating Trust Agreement, provided, however, that the date(s) selected shall be made as soon as reasonably practicable after the Effective Date, subject to the terms of the Liquidating Trust Agreement.

2.    <u>Manner of Payment Under the Plan.</u>

Any payment of Cash made by the Liquidating Trustee pursuant to the Plan may be made either by check drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Liquidating Trustee.

3.    <u>Manner of Distribution of Other Property.</u>

Any Distribution under the Plan of property other than Cash, if any, shall be made by the Liquidating Trustee (or its agent) in accordance with the terms of the Plan.

4.    <u>Set-Offs.</u>

The Liquidating Trustee may set off against any Claim and the payments to be made pursuant to the Plan in respect of such Claim, any claims of any nature whatsoever that the Debtor, Estate or the Liquidating Trust may have against the Holder of such Claim; provided that

neither the failure to effect such set-off nor the allowance of any Claim that otherwise would be subject to setoff, shall constitute a waiver or release by the Debtor, Estate or Liquidating Trust of any such claim that the Debtor, Estate or Liquidating Trust may have against such Holder.

5.      Distribution of Unclaimed Property.

Except as otherwise provided in the Plan, any Distribution of property (Cash or otherwise) under the Plan which is unclaimed after the later of (i) one hundred eighty (180) days following the Effective Date or (ii) ninety (90) days after such Distribution has been remitted to the Holder of the Allowed Claim, shall be deemed Available Cash and distributed as provided for under the Plan.

6.      De Minimis Distributions.

No cash payment of less than fifty dollars ($50.00) shall be made by the Liquidating Trustee to any Holder of a Claim, unless a request therefor is made in writing to the Liquidating Trustee.

7.      Saturday, Sunday or Legal Holiday.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

8.      Delivery of Distributions / Address of Holder.

For purposes of all notices and Distributions under the Plan, the Liquidating Trustee shall be entitled to rely on, and Distributions to Holders of Allowed Claims may be made by regular U.S. first class mail to, the following name and address for the Holder of each such Claim: (a) the address set forth in the proof of Claim Filed by such Holder; or (b) the address set forth in any written notice of address change delivered by the Holder to the Debtors or the Liquidating Trustee after the date on which any related proof of Claim was Filed.  The Liquidating Trustee shall be under no duty to attempt to locate Holders of Allowed Claims who are entitled to unclaimed Distributions.

9.      Creditors' Payment Obligations / Turnover of Property to Liquidating Trustee.

As a condition to obtaining Distributions under the Plan, any Holder of a Claim from which property is recoverable pursuant to a Final Order of the Bankruptcy Court under Sections 542, 543, 550 or 553, or otherwise, or that is a transferee of a transfer avoidable pursuant to a Final Order of the Bankruptcy Court under Sections 522, 542, 544, 545, 547, 548 or 549, or otherwise, shall pay to the Liquidating Trustee the amount, or turn over to the Liquidating Trustee any such property, for which such Holder of a Claim is liable to the Debtors.

## IV.    RELEASES AND EXCULPATION

**A.    Releases by the Debtors.**

*In consideration for services rendered to the Estates and for the consideration as more fully set forth herein, to the greatest extent permissible by law, and except as otherwise specifically provided in this Plan, as of the Effective Date, the Debtors shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever released and discharged each of the Released Parties of and from any and all past, present and future legal actions, causes of action, choses in action, rights, demands, suits, claims, liabilities, encumbrances, lawsuits, adverse consequences, amounts paid in settlement, costs, fees, damages, debts, deficiencies, diminution in value, disbursements, expenses, losses and other obligations of any kind, character or nature whatsoever, whether in law, equity or otherwise (including, without limitation, those arising under Chapter 5 of the Bankruptcy Code and applicable non-bankruptcy law, and any and all alter-ego, lender liability, indemnification or contribution theories of recovery, and interest or other costs, penalties, legal, accounting and other professional fees and expenses, and incidental, consequential and punitive damages payable to third parties), whether known or unknown, fixed or contingent, direct, indirect, or derivative, asserted or unasserted, foreseen or unforeseen, suspected or unsuspected, now existing, heretofore existing or which may heretofore accrue against the Debtors or the Released Parties (in each case, solely in their capacities as such) occurring from the beginning of time to and including the Effective Date related in any way directly or indirectly, arising out of, and/or connected with any or all of the Debtors or the Estates; provided, however, that*

*notwithstanding the foregoing or any other provision of this Plan, nothing in this Plan, or any order confirming this Plan shall affect any causes of action, claims, or counterclaims that may be asserted in connection with an objection to a Claim that has not been Allowed, in each case as determined by a court of competent jurisdiction. Notwithstanding anything to the contrary in this Plan, this Article does not release any post-Effective Date obligations of any party under this Plan or any document, instrument, or agreement executed to implement this Plan. Furthermore, nothing in this Plan shall affect the liability of any Claims held by any third party against any of the Released Parties.*

**B.    Exculpation.**

*None of the Exculpated Parties shall have or incur any liability for any act or omission in connection with, related to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, implementation, confirmation, or approval of this Plan, the administration of this Plan, or any contract, instrument, release, or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in this Plan, provided, however, that the foregoing provisions shall not affect the liability of any Person that would result solely from any such act or omission to the extent that act or omission is determined by a Final Order of the Court to have constituted willful misconduct or gross negligence or breach of fiduciary duty; provided further, however, that this provision shall not limit the Debtors' obligations under this Plan; provided further, however, that notwithstanding the foregoing or any other provision of this Plan, nothing in this Plan, or any order confirming this Plan shall affect any causes of action, claims, or counterclaims that may be asserted in connection with an objection to a Claim that has not been Allowed, in each case as determined by a court of competent jurisdiction.*

**C.    No Liability for Solicitation or Participation.**

As specified in Section 1125(e), Persons that solicit acceptances or rejections of this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule,

or regulation governing the solicitation of acceptances or rejections of this Plan or the offer, issuance, sale, or purchase of securities.

**D.    Good Faith.**

Confirmation of this Plan shall constitute a finding that the Plan was proposed, and that acceptances of the Plan were solicited, in good faith and in compliance with applicable provisions of the Bankruptcy Code.

## V.    MISCELLANEOUS PROVISIONS

**A.    Executory Contracts and Unexpired Leases.**

1.    <u>Assumptions / Rejections.</u>

On the Effective Date, any and all agreements executed by the Debtors before the Effective Date, other than agreements that were previously either assumed and assigned or rejected either by a Final Order or under Bankruptcy Code Section 365, to the extent that these agreements constitute executory contracts or unexpired leases under Section 365, shall be rejected.  The Confirmation Order shall constitute a Final Order approving this rejection.  All Allowed Rejection Damage Claims shall be treated as General Unsecured Claims against the appropriate subject Debtor under the Plan.

2.    <u>Bar Date for Rejection Damages.</u>

Any Rejection Damage Claims arising from rejection under the Plan of an executory contract or unexpired lease must be filed with the Bankruptcy Court and served on the Liquidating Trustee and its counsel within thirty (30) days after the Effective Date.  Any Rejection Damage Claims that are not timely filed and served will be forever barred and unenforceable against the Debtors, the Estates, the Liquidating Trust, the Liquidating Trustee, and their property, and the entities holding these Claims will be barred from receiving any Distributions under the Plan on account of their Rejection Damage Claims. The Liquidating Trustee shall have the right to object to any such Rejection Damage Claims; provided, however, that any such objections must be served and filed not later than one hundred eighty (180) days after the Effective Date.

3.    <u>Insurance Policies.</u>

For the avoidance of doubt, all of the Debtors' rights with respect to all insurance policies under which the Debtors may be a beneficiary (including all insurance policies that may have expired prior to the Petition Date, all insurance policies in existence on the Petition Date, all insurance policies entered into by the Debtors after the Petition Date, and all insurance policies under which the Debtors hold rights to make, amend, prosecute and benefit from claims) are retained according to their respective terms and will be transferred or assigned to the Liquidating Trust pursuant to the Plan.  Furthermore, all of the Debtors' rights with respect to insurance policies owed by the Debtors in which a third party is a beneficiary (including all insurance policies related to the liability of directors and officers) are retained according to their respective terms and will be transferred or assigned to the Liquidating Trust pursuant to the Plan, so long as such transfer and assignment does not impair such policies, with the Liquidating Trustee having authority to settle any such claims.

**B.    Preservation of Rights of Action.**

Except to the extent any rights, claims, defenses, and counterclaims are expressly and specifically released in connection with this Plan or in any settlement agreement approved during the Chapter 11 Cases: (1) any and all Estate Causes of Action accruing to the Debtors' Estates shall vest in the Liquidating Trust on the Effective Date, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such Estate Causes of Action have been listed or referred to in this Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court and (2) the Debtors' Estates do not waive, release, relinquish, forfeit, or abandon (and it shall not be estopped or otherwise precluded or impaired from asserting) any Estate Cause of Action that constitutes property of the Debtors' Estates: (a) whether or not such Estate Cause of Action has been listed or referred to in this Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court, (b) whether or not such Estate Cause of Action is currently known to the Debtors or the Liquidating Trustee, and (c) whether or not a defendant in any litigation relating to such Estate Cause of Action filed a proof of claim in the Chapter 11

Cases, filed a notice of appearance or any other pleading or notice in the Chapter 11 Cases, voted for or against this Plan, or received or retained any consideration under this Plan.

**C.    Exemption from Stamp, Transfer and Other Taxes.**

Pursuant to Section 1146(c), the issuance, transfer, or exchange of assets under the Plan by the Debtors, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery

of any deed or instrument of transfer under, in furtherance of, or in connection with the Plan, will not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**D.    Headings.**

Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

**E.    Binding Effect.**

The Plan shall be binding upon and inure to the benefit of the Debtors' Estates, Holders of Claims, Holders of Equity Interests, and their respective successors or assign.

**F.    Governing Law.**

Unless a rule of law or procedure is supplied by (1) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (2) an express choice of law provision in any agreement, contract, instrument or document provided for, or executed in connection with, this Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents and instruments executed in connection with this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of California without giving effect to the principles of conflict of laws thereof.

**G.    Withholding, Reporting, and Payment of Taxes.**

In connection with the Plan and all instruments issued in connection therewith and Distributions thereon, the Liquidating Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements. The Liquidating Trustee shall report and pay taxes on the income of the Liquidating Trust Assets, if any, as

required by applicable law.  In addition, to the extent required by applicable law, reported Distributions from such reserves shall include all interest and investment income, if any, attributable to the Cash or property being distributed net of taxes which are, or are estimated to be, due and payable thereon. For the avoidance of doubt, the Liquidating Trustee shall file with the IRS and other taxing authorities all outstanding and final returns for the Debtors.

**H.    Other Documents and Actions.**

The Debtors on and prior to the Effective Date and the Liquidating Trustee after the Effective Date may execute such other documents and take such other actions as may be necessary or appropriate to effectuate the transactions contemplated under this Plan.

**I.    Notices.**

Any notice to the Debtors or Liquidating Trustee required or permitted to be provided under the Plan shall be in writing and served by either (1) certified mail, return receipt requested, postage prepaid, (2) hand delivery, or (3) reputable overnight delivery service, freight prepaid, to be addressed as follows:

DEBTORS:
Ittella International, LLC et al.
Edward Bidanset, CRO
39W372 W Curtis Sq.
Geneva, IL 60134

with a copy to:

Levene, Neale, Bender, Yoo & Golubchik L.L.P.
David L. Neale
Todd M. Arnold
Robert M. Carrasco
2818 La Cienega Avenue
Los Angeles, CA 90034
Facsimile: (310) 229-1244
Email: DLN@LNBYG.COM; TMA@LNBYG.COM; RMC@LNBYG.COM

*Bankruptcy Counsel to the Debtors*

- and -

LIQUIDATING TRUSTEE:
[TBD]

**J.      Severability of Plan Provisions.**

If, prior to Confirmation, any term or provision of the Plan is found by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**K.      Successors and Assigns.**

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and assigns of such entity.

**L.      Books and Records.**

Upon the Case Closing Date, the Liquidating Trustee shall be authorized, in the exercise of its sole and absolute discretion, to discard or destroy any and all pre-Effective Date books and records of the Debtors in the Liquidating Trustee's custody or control. The Liquidating Trustee shall continue to preserve post-Effective Date books and records in its custody or control through the Case Closing Date, or as otherwise provided by order of the Bankruptcy Court.

**M.      Effectiveness of Court Orders.**

All orders and judgments, including injunctions, entered by the Bankruptcy Court during the Chapter 11 Cases, and in existence on the Confirmation Date, shall remain in full force and effect from and after the Effective Date, to the extent not inconsistent with the provisions of this Plan or the Confirmation Order.

**N.      No Waiver.**

Neither the failure to list a Claim in the Schedules filed by the Debtors, the failure to object to any Claim for purposes of voting, the failure to object to a Claim or Administrative Claim prior to the Effective Date, the failure to assert an Estate Cause of Action prior to the Effective Date, nor any action or inaction with respect to a Claim, Administrative Claim, or Estate Cause of Action, other than a legally effective express waiver or release, shall be deemed to be a waiver or release of the right of the Liquidating Trustee to object to or examine such Claim or Administrative Claim, in whole or in part, or retain and assert, pursue, prosecute, litigate, or otherwise enforce any Estate Cause of Action.

**O.      Other Documents and Actions.**

The Debtors and the Liquidating Trustee may execute such other documents and take such other actions as may be necessary or appropriate to effectuate the transactions contemplated under this Plan.

**P.      Inconsistencies.**

In the event that any provisions of this Plan are inconsistent with the provisions of the Disclosure Statement, the provisions of this Plan shall control.

**Q.      Implementation of Section 1142 of the Bankruptcy Code.**

Pursuant to Section 1142(a), the Debtor and the Liquidating Trustee are authorized to carry out the terms of this Plan.  Pursuant to Section 1142(b), all Holders of Claims and Holders of Equity Interests shall execute and deliver, or join in the execution and delivery of, any instrument or document appropriate to effectuate this Plan, and perform any other act that is appropriate for the consummation of this  Plan. To the extent that any Holder of a Claim or Holder of an Equity Interest fails to comply with these provisions, the Debtor and the Liquidating Trustee shall be entitled to obtain, on an expedited basis, an order of the Bankruptcy Court compelling such Holder's compliance with these provisions, and, during the time period encompassed by such Holder's non-compliance, no payment shall be made to such Holder under this Plan.

**R.      Retention of Jurisdiction.**

The Plan shall not in any way limit the Bankruptcy Court's post-confirmation jurisdiction as provided under the Bankruptcy Code.  The Bankruptcy Court will retain and have exclusive jurisdiction to the fullest extent permissible over any proceeding (i) arising under the Bankruptcy Code or (ii) arising in or related to the Chapter 11 Cases or the Plan, including but not limited to the following:

1.      To hear and determine pending motions for the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases, if any are pending as of the Effective Date, the determination of any cure payments related thereto, and the allowance or disallowance of Claims resulting therefrom;

2.      To determine any and all adversary proceedings, applications, motions, and contested matters instituted prior to the closing of the Chapter 11 Cases;

3.      To ensure that Distributions to holders of Allowed Claims are accomplished as provided in the Plan;

4.      To hear and determine any objections to Administrative Claims and to proofs of Claims filed both before and after the Effective Date (including, without limitation,  whether all or any part of any Claim set forth in any such proof of Claim or Administrative Claim is subject to partial or complete subordination pursuant to applicable law), and to allow or disallow any Disputed Claim in whole or in part, provided, however, that, for the avoidance of doubt, the Liquidating Trustee may settle or compromise (including by set-off) any Disputed Claim without further Order of the Court;

5.      To hear and determine all applications for compensation and reimbursement of expenses of Professional Persons under Sections 330, 331, and 503(b);

6.      To hear and determine any disputes arising in connection with the interpretation, implementation, execution, or enforcement of the Plan, the Liquidating Trust Agreement, the Confirmation Order, or any other order of the Bankruptcy Court;

7.      To hear or determine any action to recover assets of the Estate, wherever located;

8.    To hear and determine any actions or matters related to Estate Causes of Action, whether or not such actions or matters are pending on the Effective Date;

9.    To hear and determine any matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146;

10.    To hear and determine any objections to the allowance of Claims or Administrative Claims, whether filed before or after the Confirmation Date, including any objections to the classification of any Claim, and any proceedings to allow, disallow, determine, liquidate, estimate, or establish the priority or the secured or unsecured status of any Claim, or to establish reserves pending the resolution of Disputed Claims;

11.    To hear and determine any proceeding to modify the Plan, after confirmation of the Plan, and, if in the best interests of Holders of Claims, modification of the Plan even after the Plan has been substantially consummated;

12.    To consider the issuance of injunctions or other orders as may be necessary or appropriate to aid in the implementation of the Plan or to restrain interference by any entity with the consummation or the enforcement of the Plan;

13.    To hear any other matter not inconsistent with the Bankruptcy Code;

14.    To hear any other matter deemed relevant by the Bankruptcy Court; and

15.    To enter a final decree closing the Chapter 11 Cases.

## VI.    EFFECTIVENESS OF THE PLAN

**A.    Conditions Precedent.**

The Effective Date shall not occur until the following condition(s) (the "Conditions Precedent") have been satisfied or waived:

1.    the Bankruptcy Court shall have entered an order granting approval of the Disclosure Statement and finding that it contains adequate information pursuant to section 1125 of the Bankruptcy Code and that order shall have become a Final Order;

2.    the Bankruptcy Court shall have entered a Confirmation Order that is in form and substance satisfactory to the Debtors and the Committees;

3.    the Confirmation Order shall have become a Final Order;

4.     the Ittella Committee shall have selected the Liquidating Trustee and the Oversight Committee; and

5.     no stay of the Confirmation Order is in effect.

**B.     The Effective Date.**

The Plan will not be consummated or become binding unless and until the Effective Date occurs.  The Effective Date will be the first day on which all Conditions Precedent have been satisfied or waived.  In no event shall the Effective Date occur later than the thirtieth (30th) day following the entry of the Confirmation Order.  If all Conditions Precedent have not been satisfied prior to the thirtieth (30th) day following the entry of the Confirmation Order, on the thirtieth (30th) day following the entry of the Confirmation Order, all Conditions Precedent shall be deemed immediately waived.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

**C.     Confirmation Request.**

In the event that all of the applicable requirements of Section 1129(a) are met other than Section 1129(a)(8), the Debtors request confirmation of the Plan under Section 1129(b).  The Debtors will provide further support for Confirmation of the Plan under the "cram down" provisions of Section 1129(b) in its brief to be filed in support of the Plan.

**D.     Notice of the Effective Date.**

As soon as practicable after the Effective Date has occurred, the Liquidating Trustee shall file with the Bankruptcy Court an informational notice specifying the Effective Date, as a matter of record.

## VII.     EFFECT OF CONFIRMATION

**A.     Discharge.**

1.     <u>Injunction Enjoining Holders of Claims Against Debtors.</u>

The Plan is the sole means for resolving, paying or otherwise dealing with Claims and Equity Interests.  To that end, except as expressly provided in the Plan, at all times on and after the Effective Date, all Persons who have been, are, or may be holders of Claims against or

Interests in the Debtors, arising prior to the Effective Date, will be permanently enjoined from taking any of the following actions, on account of any such Claim or Equity Interest, against the Debtors, the Estates, the Liquidating Trust or its property (other than actions brought to enforce any rights or obligations under the Plan):

　　　　a.　　commencing, conducting or continuing in any manner, directly or indirectly any suit, action, or other proceeding of any kind against the Debtors and/or Estates, the Liquidating Trust, or the Liquidating Trustee, their successors, or their respective property or assets (including, without limitation, all suits, actions, and proceedings that are pending as of the Effective Date which will be deemed to be withdrawn or dismissed with prejudice);

　　　　b.　　enforcing, levying, attaching, executing, collecting, or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree, or order against the Debtors, the Estates, the Liquidating Trust, or the Liquidating Trustee, their successors, or their respective property or assets;

　　　　c.　　creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any lien, security interest or encumbrance against the Debtors, the Estates, the Liquidating Trust, or the Liquidating Trustee, their successors, or their respective property or assets; and

　　　　d.　　proceeding in any manner in any place whatsoever against the Debtors, the Estates, the Liquidating Trust, or the Liquidating Trustee, their successors, or their respective property or assets that does not conform to or comply with the provisions of the Plan.

2.　　<u>Non-discharge of the Debtors.</u>

In accordance with Section 1141(d)(3), the Confirmation Order will not discharge Claims. However, no Holder of a Claim may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Holder pursuant to the Plan. As of the Confirmation Date, all Persons are enjoined from asserting against any property that is to be distributed under the Plan, any Claims,

rights, causes of action, liabilities, or Equity Interests based upon any act, omission, transaction, or other activity that occurred before the Confirmation Date except as expressly provided in the Plan or the Confirmation Order.

**B.      Revesting of Property in the Liquidating Trust.**

As set forth above, except as expressly provided under the Plan, on the Effective Date, the Debtors' Assets, including, without limitation, all Estate Causes of Action, will vest in the Liquidating Trust free and clear of all claims, liens, encumbrances, charges and other interests, subject to the provisions of the Plan.  On and after the Effective Date, the transfer of the Debtors' Assets from the Estates to the Liquidating Trust will be deemed final and irrevocable and Distributions may be made from the Liquidating Trust.

**C.      Withdrawal or Modification of Plan.**

Prior to the Effective Date, the Plan may be withdrawn as to one or more of the Debtors or may be altered, amended, or modified pursuant to Section 1127 by the Debtors.  After the Effective Date, the Liquidating Trustee shall have the sole authority and power to alter, amend, or modify the Plan pursuant to Section 1127.

**D.      Post-Confirmation Status Report.**

Within 180 days after the entry of the Confirmation Order, the Debtors or the Liquidating Trustee, as appropriate, shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served on the UST and those parties who have requested special notice.  Further status reports shall be filed every 365 days or as otherwise directed by the Bankruptcy Court and served on the same parties.

**E.      Quarterly Fees.**

All quarterly fees due and payable to the Office of the United States Trustee pursuant to section 1930(a)(6) of title 28 of the United States Code shall be duly paid in full on or before the Effective Date, as required by Section 1129(a)(12).  The Liquidating Trust shall be responsible for timely payment of such quarterly fees due and payable after the Effective Date and until the Chapter 11 Cases are closed, pursuant to section 1930(a)(6) of title 28 of the United States Code, with respect to cash disbursements made by the Liquidating Trustee under the Plan.  After the

Effective Date and until the Chapter 11 Cases are closed, the Liquidating Trustee shall file with the Office of the United States Trustee monthly financial reports specifying all disbursements made pursuant to the Plan and shall make all payments based upon such disbursements as required by applicable law.

**F.    Final Decree.**

Pursuant to FRBP 3022, a final decree may not be entered until a bankruptcy case is fully administered.  The Bankruptcy Court may, however, allow a final decree to be entered at an earlier date for cause shown.  Pursuant to LBR 3022-1, notice of a motion for a final decree must be served upon all parties upon whom the Plan was served.

Dated: January 29, 2024

ITTELLA INTERNATIONAL LLC,
ITTELLA'S CHEF, LLC,
TATTOOED CHEF, INC.,
MYJOJO, INC.,
NEW MEXICO FOOD DISTRIBUTORS, INC.,
KARSTEN TORTILLA FACTORY, LLC, a New
BCI ACQUISITION, INC., and
TTCF-NM HOLDINGS INC.,


EDWARD BIDANSET,
Chief Restructuring Officer

PRESENTED BY

LEVENE, NEALE, BENDER YOO
    & GOLUBCHIK L.L.P.

By:___*/s/ David L. Neale*_____
        DAVID L. NEALE
        TODD M. ARNOLD
        ROBERT M. CARRASCO
Counsel for Chapter 11 Debtors and Debtors in Possession

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034

A true and correct copy of the foregoing document entitled **DEBTORS' JOINT CHAPTER 11 LIQUIDATING PLAN DATED JANUARY 29, 2024** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **January 29, 2024**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Mark A Amendola    mamendola@martynlawfirm.com**
- **Todd M Arnold     tma@lnbyg.com**
- **Marshall J August    maugust@frandzel.com, rsantamaria@frandzel.com**
- **Jessica L Bagdanov    jbagdanov@bg.law, ecf@bg.law**
- **Tanya Behnam    tbehnam@polsinelli.com,**
  **tanyabehnam@gmail.com;ccripe@polsinelli.com;ladocketing@polsinelli.com**
- **Michael Jay Berger    michael.berger@bankruptcypower.com,**
  **yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com**
- **Daren Brinkman    firm@brinkmanlaw.com, 7764052420@filings.docketbird.com**
- **Bradley E Brook    bbrook@bbrooklaw.com,**
  **paulo@bbrooklaw.com;brookecfmail@gmail.com**
- **Robert Carrasco    rmc@lnbyg.com, rmc@lnbyg.com**
- **Andrew Michael Cummings    andrew.cummings@hklaw.com,**
  **philip.dobbs@hklaw.com;hapi@hklaw.com;reena.kaur@hklaw.com**
- **Abram Feuerstein    abram.s.feuerstein@usdoj.gov**
- **John-Patrick M Fritz    jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com**
- **Bernard R Given    bgiven@loeb.com,**
  **mortiz@loeb.com;ladocket@loeb.com;fmckeown@loeb.com;bgiven@ecf.courtdrive.com**
- **Michael J Gomez    mgomez@frandzel.com, dmoore@frandzel.com**
- **Michael I. Gottfried    mgottfried@elkinskalt.com,**
  **cavila@elkinskalt.com,lwageman@elkinskalt.com,docketing@elkinskalt.com**
- **Arnold L Graff    agraff@wrightlegal.net,**
  **bkudgeneralupdates@wrightlegal.net;jpowell@wrightlegal.net**
- **Everett L Green    everett.l.green@usdoj.gov**
- **Ian M Green    igreen@hillfarrer.com, avillar@hillfarrer.com**
- **David S Hagen    davidhagenlaw@gmail.com**
- **D Edward Hays    ehays@marshackhays.com,**
  **ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;**
  **cmendoza@ecf.courtdrive.com**
- **Mark S Horoupian    mark.horoupian@gmlaw.com,**
  **mhoroupian@ecf.courtdrive.com;cheryl.caldwell@gmlaw.com;karen.files@gmlaw.com**
- **Jacqueline L James    jjames@hrhlaw.com**
- **K Kenneth Kotler    kotler@kenkotler.com, linda@kenkotler.com**
- **Jeffrey C Krause    jkrause@gibsondunn.com,**
  **dtrujillo@gibsondunn.com;jstern@gibsondunn.com**
- **Jeffrey A Krieger    jkrieger@ggfirm.com,**
  **kwoodson@greenbergglusker.com;calendar@greenbergglusker.com;jking@greenbergglusker.com**
- **Dare Law    dare.law@usdoj.gov**
- **Aaron J Malo    amalo@sheppardmullin.com,**
  **abilly@sheppardmullin.com;rgolder@sheppardmullin.com**
- **Ron Maroko    ron.maroko@usdoj.gov**

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                               **F 9013-3.1.PROOF.SERVICE**

- **Laila Masud    lmasud@marshackhays.com,**
  **lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.co**
  **m**
- **Kyle J Mathews    kmathews@sheppardmullin.com**
- **Daniel J McCarthy    dmccarthy@hillfarrer.com,**
  **spadilla@hillfarrer.com;nchacon@hfbllp.com**
- **William McCormick    Bill.McCormick@ag.tn.gov**
- **David W. Meadows    david@davidwmeadowslaw.com**
- **Shane Thomas Micheil    stmicheil@vorys.com**
- **Angela Z Miller    amiller@phillipslytle.com, styrone@phillipslytle.com**
- **John A Moe    john.moe@dentons.com,**
  **glenda.spratt@dentons.com;derry.kalve@dentons.com**
- **Tania M Moyron    tania.moyron@dentons.com,**
  **rebecca.wicks@dentons.com;kathryn.howard@dentons.com;derry.kalve@dentons.com;g**
  **lenda.spratt@dentons.com;DOCKET.GENERAL.LIT.LOS@dentons.com**
- **Alan I Nahmias    anahmias@mbn.law, jdale@mbn.law**
- **David L. Neale    dln@lnbyg.com**
- **Matthew D. Resnik    Matt@rhmfirm.com,**
  **roksana@rhmfirm.com;rosario@rhmfirm.com;sloan@rhmfirm.com;priscilla@rhmfirm.co**
  **m;rebeca@rhmfirm.com;david@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;rus**
  **s@rhmfirm.com**
- **Edward Rubacha    er@jhkmlaw.com, docket@jhc.law;am@jhc.law**
- **Allan D Sarver    ADS@asarverlaw.com**
- **Scott A Schiff    sas@soukup-schiff.com**
- **Susan K Seflin    sseflin@bg.law**
- **Paul R Shankman    PShankman@fortislaw.com, info@fortislaw.com**
- **Mark M Sharf    msharf00@gmail.com,**
  **2180473420@filings.docketbird.com;mark_091@ecf.courtdrive.com**
- **Amitkumar Sharma    amit.sharma@aisinfo.com**
- **David Samuel Shevitz    David.S.Shevitz@usdoj.gov**
- **Ronald P Slates    rslates2@rslateslaw.com,**
  **scannavan@rslateslaw.com;slatesecf@rslateslaw.com**
- **Lindsey L Smith    lls@lnbyg.com, lls@ecf.inforuptcy.com**
- **Randy S Snyder    rsnyder@rsslegal.com**
- **Madison S Spach    mspach@scwlawfirm.com, jchoi@scwlawfirm.com**
- **John M Stern    bk-jstern@oag.texas.gov, bk-mbecker@oag.texas.gov**
- **Alan G Tippie    Alan.Tippie@gmlaw.com,**
  **atippie@ecf.courtdrive.com;Karen.Files@gmlaw.com,patricia.dillamar@gmlaw.com,denis**
  **e.walker@gmlaw.com**
- **Kelly Ann M Tran    kelly@smalllawcorp.com, katelin@smalllawcorp.com**
- **John Kendrick Turner    john.turner@lgbs.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**
- **Glenn S Walter    gwalter@honigman.com**
- **Gerrick Warrington    gwarrington@frandzel.com, achase@frandzel.com**
- **David Wood    dwood@marshackhays.com,**
  **dwood@ecf.courtdrive.com;lbuchananmh@ecf.courtdrive.com;alinares@ecf.courtdrive.c**
  **om**
- **Roye Zur    rzur@elkinskalt.com,**
  **cavila@elkinskalt.com;lwageman@elkinskalt.com;1648609420@filings.docketbird.com**

**2. SERVED BY UNITED STATES MAIL**: On **January 29, 2024**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

In re itella International LLC
Case No. 10097
RSN +SEC
Served by U.S. Mail or **NEF** if marked
with an **\***

U.S. Securities and Exchange Commission
Attn: Bankruptcy Counsel
444 South Flower Street, Suite 900
Los Angeles, CA 90071-9591

Attn: BMW Financial Services NA,
LLC Department /AIS Portfolio
Services, LLC / Amit Sharma **(NEF)\***
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118

SUITABLE STAFFING SOLUTIONS, INC.
c/o Frandzel Robins Bloom & Csato, L.C.
Attn: Marshall J. August **(NEF)\***
1000 Wilshire Boulevard, 19th Floor
Los Angeles, California, 90017-2427

Edward Rubacha **(NEF)\***
Jennings Haug Keleher McLeod,
L.L.P.
2800 N. Central Avenue, Suite 1800
Phoenix, AZ 85004-1049

SKILLSET GROUP LLC
c/o Law Offices of K. Kenneth Kotler Attention:
K. Kenneth Kotler **(NEF)\***
1901 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067

☐ *Additional service per Proof of Service to be filed by Stretto*

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **January 29, 2024**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**SERVED BY PERSONAL DELIVERY**
Honorable Sandra R. Klein
United States Bankruptcy Court
255 E. Temple Street, Suite 1582 / Courtroom 1575
Los Angeles, CA 90012

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| January 29, 2024 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                  **F 9013-3.1.PROOF.SERVICE**